## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-KM-01252-SCT

*GRAHAM ALEXANDER FLOYD*

*v.*

*CITY OF CRYSTAL SPRINGS, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/28/1998 |
| TRIAL JUDGE: | HON. LAMAR PICKARD |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT LEWIS SPOTSWOOD |
| ATTORNEY FOR APPELLEE: | ROBERT W. LAWRENCE |
| NATURE OF THE CASE: | CRIMINAL - MISDEMEANOR |
| DISPOSITION: | AFFIRMED - 11/24/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/15/99 |

## EN BANC.

## SMITH, JUSTICE, FOR THE COURT:

¶1. This case comes to this Court on appeal following the conviction in the Circuit Court of Copiah County, Mississippi, of Graham Floyd for first offense DUI.

¶2. On April 24, 1997, Graham Floyd was operating his vintage red 1966 Ford Mustang convertible in an easterly direction along Highway 27 within the City of Crystal Springs, Mississippi, when he was stopped by members of the Crystal Springs Police Department and subsequently arrested for driving under the influence. Floyd was tried and convicted by the Municipal Court of Crystal Springs, Mississippi, for DUI, first offense, on May 15, 1997.

¶3. Floyd then appealed the conviction to the Circuit Court of Copiah County, Mississippi. Circuit Judge Lamar Pickard conducted a de novo bench trial and found Floyd guilty of DUI, first offense, in violation of Miss. Code Ann. § 63-11-30(1)(a) (Supp. 1998). Floyd was sentenced to pay a fine of $500.00 plus State assessments in the amount of $172.00, and was taxed with all costs of the appeal to the circuit court. Floyd now appeals the conviction to this Court.

## STATEMENT OF FACTS

¶4. Officer Gerome Leflore of the Crystal Springs Police Department was off duty when a citizen approached him at a gas station on Mississippi Highway 27 on April 24, 1997, and reported to him that there was a person in an antique model, red Mustang convertible driving at a high rate of speed in a reckless manner headed into town on Highway 51. Because Officer Leflore was not on duty at the time, he

called the Crystal Springs Police Department and relayed the information to the dispatcher. Officer Leflore testified that the citizen who reported the incident, David Rogers, had given Leflore information and complaints in the past.

¶5. The police dispatcher radioed the information to Officer Chris Palmer, who proceeded to the intersection of Highway 51 and Highway 27 in Crystal Springs, where he intercepted a vehicle matching the description given by the dispatcher. When Officer Palmer began following the Mustang, there was a vehicle between Officer Palmer's patrol car and the Mustang, and Officer Palmer testified that he did not see the driver of the Mustang violate any traffic laws. As soon as Officer Palmer could safely pass the vehicle, he pulled the Mustang to the side of the road.

¶6. Officer Palmer testified that he asked the driver, Graham Floyd, for his license. Officer Palmer stated that the top was down on the convertible, and he noticed a glass on the middle console of the vehicle and an opened bottle of a white substance labeled "vodka" on the passenger side.

¶7. Officer Palmer testified that he asked Floyd to step from the vehicle, and that, when Floyd did so, he staggered, and Officer Palmer had to step between Floyd and the highway to keep Floyd safely out of the highway. Officer Palmer stated that Floyd told him he had had a few drinks at the County Line beer joint and was drinking some on the way home. Officer Palmer also testified that Floyd's speech was "really slurred," and that Floyd muttered and talked loudly. Officer Palmer stated that Floyd tried to fix his pants leg and almost fell.

¶8. Officer Palmer testified that Floyd had a knot on his head that was bleeding a little, apparently from a fight Floyd had been engaged in earlier that evening. Palmer stated that he asked Floyd several times whether Floyd wanted to see a doctor, but that Floyd refused medical assistance.

¶9. Officer Palmer then thought it necessary to transport Floyd to the police department for the intoxilizer test, so he handcuffed Floyd and drove him to the police station. At the station, Officer Palmer told Floyd he had the right to refuse the test and explained the consequences of refusal. At that time, Floyd asked to use the telephone to call his attorney. Officer Palmer testified that, upon Floyd's request, he gave Floyd the nearest telephone available, which was only five feet from where the two were sitting. Officer Palmer did not leave the room while Floyd called his attorney. Floyd told his attorney on the phone that he had had a few drinks. Subsequent to the telephone conversation, Floyd refused to take the intoxilizer test.

¶10. Floyd was tried and convicted by the Municipal Court of Crystal Springs, Mississippi, for DUI, first offense, on May 15, 1997. Floyd then appealed the conviction to the Circuit Court of Copiah County, Mississippi. Circuit Judge Lamar Pickard conducted a de novo bench trial and found Floyd guilty of DUI, first offense, in violation of Miss. Code Ann. § 63-11-30(1)(a) (Supp. 1998). At trial, Floyd's counsel objected to the introduction of the telephone conversation and moved to dismiss for lack of probable cause to stop Floyd's vehicle. Judge Pickard reserved ruling on the objection regarding the telephone conversation, and never issued a final ruling to that objection. Judge Pickard overruled the motion to dismiss, and stated that there was probable cause to stop the vehicle. From this ruling, Floyd appeals, raising the following issues:

**I. WHETHER A POLICE OFFICER HAS THE LAWFUL AUTHORITY TO STOP A VEHICLE WHEN THE OFFICER DID NOT OBSERVE ANY MOTOR VIOLATIONS OR SUSPICIOUS DRIVING, YET RECEIVED SPECIFIC INFORMATION FROM A**

**THIRD PARTY WARNING THAT THE DRIVER WAS OPERATING THE VEHICLE IN A RECKLESS MANNER.**

**II. WHETHER INCRIMINATING STATEMENTS MADE BY A SUSPECT DURING A TELEPHONE CONVERSATION WITH HIS ATTORNEY MAY BE USED AGAINST THE DEFENDANT WHEN THE CONVERSATION TOOK PLACE IN THE PRESENCE OF A POLICE OFFICER AND AFTER THE DEFENDANT HAD BEEN PLACED IN CUSTODY.**

**STANDARD OF REVIEW**

¶11. This Court must utilize a separate standard of review for each of the two issues raised by Floyd. First, determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed. 2d 911 (1996). This Court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers. *Id.* Thus, this Court is restricted to a de novo review of the trial judge's findings using the applicable "substantial evidence"/"clearly erroneous" standard. *McNeal v. State*, 617 So. 2d 999, 1007 (Miss. 1993) (citing *Hansen v. State*, 592 So. 2d 114 (Miss.1991)).

¶12. Second, this Court has held that "[t]he standard of review regarding admission [or exclusion] of evidence is abuse of discretion." *Thompson Mach. Commerce Corp. v. Wallace*, 687 So. 2d 149, 152 (Miss. 1997). Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party." *In re Estate of Mask*, 703 So. 2d 852, 859 (Miss. 1997); *Terrain Enters., Inc. v. Mockbee*, 654 So. 2d 1122, 1131 (Miss. 1995).

**DISCUSSION**

**I. WHETHER A POLICE OFFICER HAS THE LAWFUL AUTHORITY TO STOP A VEHICLE WHEN THE OFFICER DID NOT OBSERVE ANY MOTOR VIOLATIONS OR SUSPICIOUS DRIVING, YET RECEIVED SPECIFIC INFORMATION FROM A THIRD PARTY WARNING THAT THE DRIVER WAS OPERATING THE VEHICLE IN A RECKLESS MANNER.**

¶13. Floyd argues that the power of a law enforcement officer to perform an investigatory stop without a warrant is limited to those instances when a misdemeanor or felony is committed in the presence of the officer or when the officer reasonably believes that the suspect is involved in a felony. Thus, Floyd contends that because reckless driving is a misdemeanor and because Officer Palmer did not personally observe Floyd driving in a reckless manner, the stop performed by Officer Palmer was unlawful as a violation of the Fourth Amendment's prohibition against unreasonable search and seizure.

¶14. The Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution contain almost identical language expressing a person's right to be secure from unreasonable searches and seizures. The prohibition against unreasonable searches and seizures "applies to seizures of the person, including brief investigatory stops such as the stop of a vehicle." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 694, 66 L.Ed. 2d 852 (1981). *See also Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 16-19, 88 S.Ct. 1868, 1877, 20

L.Ed. 2d 889 (1968).

¶15. By statute in Mississippi, a law enforcement officer may <u>arrest</u>, without a warrant, a suspect for a misdemeanor when the misdemeanor was committed in the officer's presence. Miss. Code Ann. § 99-3-7(1) (Supp. 1999). However, the statute permits an officer to arrest a suspect for a felony where the officer has reasonable ground to believe the person to be arrested committed a felony, even though not committed in the officer's presence.

¶16. The constitutional requirements for an investigative stop and detention are less stringent than those for an arrest. This Court has recognized that "given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest," that is, on less information than is constitutionally required for probable cause to arrest. *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975). *See also* *McCray v. State*, 486 So. 2d 1247, 1249 (Miss. 1986). Such an investigative stop of a suspect may be made so long as an officer has "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony...."*McCray*, 486 So. 2d at 1249 (quoting *United States v. Hensley*, 469 U.S. 221, 229, 105 S.Ct. 675, 680, 83 L.Ed. 2d 604, 612 (1985)), or as long as the officers have "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *McCray*, 486 So. 2d at 1249-50 (quoting *Cortez*, 449 U.S. at 417, 101 S.Ct. at 695).

¶17. The United States Supreme Court approved this investigatory procedure in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889 (1968), and *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed. 2d 612 (1972). In determining whether there exists the requisite "reasonable suspicion, grounded in specific and articulable facts," the court must consider whether, taking into account the totality of the circumstances, the detaining officers had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417-18, 101 S.Ct. at 694-95 (citing *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed. 2d 357 (1979)).

¶18. As this Court noted in *Singletary*, the United States Supreme Court has "unequivocally settled the question of the lawfulness of an investigative stop where there is no probable cause to arrest if the officer acts reasonably." *Singletary*, 318 So. 2d at 877. The test is thus one of reasonableness, and neither this Court nor the United States Supreme Court has articulated a concrete rule to determine what circumstances justify an investigatory stop. *Green v. State*, 348 So. 2d 428, 429 (Miss. 1977). The question is approached on a case-by-case basis. *Id.* The United States Supreme Court has stated that, as a general rule, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed. 2d 89 (1996) (citing *Delaware v. Prouse*, 440 U.S. 648, 659, 99 S.Ct. 1391, 1399, 59 L.Ed. 2d 660 (1979); *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S.Ct. 330, 332, 54 L.Ed. 2d 331 (1977)).

¶19. Floyd argues that an investigative stop is lawful only where the officer has observed the suspect committing a misdemeanor or reasonably believes the person to have committed a felony. Floyd contends that because an officer could not lawfully arrest a suspect without a warrant where the misdemeanor was committed outside the officer's presence, the investigative stop of a misdemeanor suspect violates the Fourth Amendment where the misdemeanor occurred outside the officer's presence. The State distinguishes between the standard of reasonable suspicion required for an investigative stop and the misdemeanor / felony distinction made by Miss. Code Ann. § 99-3-7 in determining probable cause to arrest.

¶20. For this argument, Floyd cites to the following language found in *Floyd v. State*, 500 So. 2d 989 (Miss. 1986):

> An investigative stop may be made even where officials have no probable cause to make an arrest as long as they have "a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved or is wanted in connection with a completed felony . . . or 'some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.'"

*Floyd*, 500 So. 2d at 992 (quoting *McCray v. State*, 486 So. 2d at 1249-50). The defendant in *Floyd* was suspected of drug trafficking. The highway patrol put out a bulletin on the defendant's vehicle. The defendant was subsequently spotted by a trooper and pulled over. The trooper first arrested the defendant, then smelled marijuana when he leaned inside the car. The trooper then opened the trunk and discovered bales of marijuana. On appeal, this Court stated that the trooper lacked both the reasonable suspicion of criminal activity required to make the stop as well as the probable cause required to arrest the defendant. *Floyd*, 500 So. 2d at 993 n.1. The trooper lacked reasonable suspicion to make the stop because he was told only to be on the lookout for the defendant's vehicle and to advise headquarters if he stopped the vehicle. The trooper had no idea why the defendant was wanted. The trooper lacked probable cause to make the arrest because the arrest preceded the discovery of the marijuana, and the scant information given to the officer was not enough to amount to probable cause.

¶21. The above quoted language which is urged by Floyd in this case was first utilized by this Court in *McCray v. State*, 486 So. 2d 1247 (Miss. 1986). Like *Floyd*, *McCray* involved a suspected felony, not a traffic violation. In *McCray*, officers observed certain characteristics of the often-used drug courier profile in determining that the defendant was likely involved in drug trafficking. Officers stopped the defendant in an airport terminal. A drug-detecting dog reacted positively to the suitcase belonging to the defendant. The defendant was asked to accompany the officers to the airport police office where the defendant consented to a search of his bags. This Court held that even if the initial stop of the defendant exceeded the scope of the investigative search and thus amounted to a seizure, the officers had probable cause to do so. *McCray*, 486 So. 2d at 1250.

¶22. Floyd also cites to *Haddox v. State*, 636 So. 2d 1229 (Miss. 1994), another drug trafficking case which, again, cites *Floyd* for the requirement that to make an investigative stop, an officer needs only a reasonable suspicion that the suspect is involved in a felony. *Haddox*, 636 So. 2d at 1233. In *Haddox*, a law enforcement officer received information from a confidential informant that the defendants, two sisters, were to be driving into Marion County with a large amount of marijuana. The officer pulled over the vehicle driven by the sisters, and, upon not seeing any contraband in plain view, informed the sisters that they would have to wait while a search warrant was obtained. On appeal, the sisters argued that the detention amounted to an arrest and that the officer did not have probable cause to detain them. The Court held that the detention, which lasted only five to ten minutes, did not amount to an arrest, but was within the purview of the investigative stop, and that, at the time of the stop, there was no reasonable belief that the stop would turn into a more permanent detainment, i.e. a full arrest. *Id.* at 1237. As in both *Floyd* and *McCray*, this Court was not called upon in *Haddox* to make the felony/misdemeanor distinction, and the stop was unrelated to any traffic offense.

¶23. Examining only the language of *Floyd*, *McCray* and *Haddox* containing the statement that to make an investigative stop, an officer needs only a reasonable suspicion that the suspect is involved in a felony, it

would seem, at first blush, that Floyd's argument that Officer Palmer could not lawfully stop him for a traffic violation which did not occur in Officer Palmer's presence is correct. Nevertheless, this argument is misplaced.

¶24. First, the language argued by Floyd from *Floyd*, *McCray*, and *Haddox* allows an officer to make an investigative stop where the traffic violation did not occur in his presence. Again, that language reads:

> An investigative stop may be made even where officials have no probable cause to make an arrest as long as they have 'a reasonable suspicion, grounded on specific and articulable facts, that a person they encounter was involved or is wanted in connection with a completed felony . . . or some <u>objective manifestation that the person stopped is, or is about to be engaged in criminal activity</u>.'

*Floyd*, 500 So. 2d at 992 (quoting *McCray*, 486 So. 2d at 1249-50) (emphasis added). As Floyd points out, traffic violations are misdemeanors, and misdemeanors are, technically speaking, "criminal activity" in that misdemeanors, like felonies, are crimes. Therefore, the very language urged by Floyd allows an officer to stop a suspect so long has he has a reasonable suspicion of any "criminal activity."

¶25. Second, Floyd takes the language relied upon out of context. The facts of neither *Floyd*, *McCray*, nor *Haddox* stand for the proposition for which Floyd cites those cases. The defendants in all three cases were suspected of felonies; thus, this Court was not faced with making a felony/misdemeanor distinction in any of cases cited by Floyd. The quoted language relied upon by Floyd is found either in cases like the three discussed above in which the investigative stop was made for purposes wholly unrelated to a traffic violation or in cases in which the suspect was stopped initially for a traffic violation, but where the suspect was detained for something unrelated to the traffic violation. *See, e.g.*, *Chapman v. State*, 284 So. 2d 525 (Miss. 1973) (defendant was stopped for speeding and was detained because she and her companions fit the description of the persons who had recently robbed a grocery store). This Court has never applied the language relied upon by Floyd to simply a stop made for purposes of investigating a possible traffic violation.

¶26. Third, applying the felony/misdemeanor distinction in traffic violation cases would require law enforcement officials to ignore communications of other officials warning of drivers who may be impaired, ill, reckless, or dangerous to the public unless the officer has probable cause to arrest. The State urges this Court to recognize the common sense rule enunciated by the Maryland Court of Special Appeals in *State v. Alexander*, 721 A.2d 275 (Md. Ct. Spec. App. 1998):

> "[W]hen police cross a threshold not in their criminal investigatory capacity, but as a part of their community caretaking function, it is clear that the standard for assessing the Fourth Amendment propriety of such conduct is whether they possessed a reasonable basis for doing what they did . . . . [T]he question is whether there were reasonable grounds to believe that some kind of an emergency existed, that is, whether there was evidence which would lead a prudent and reasonable official to see the need to act . . . ."

*Id.* at 284 (holding that marijuana discovered in plain view was admissible where police entered a residence without a warrant to investigate a potential breaking and entering and to determine whether there were any victims). The Fifth Circuit has recognized a similar rule, cited by this Court in *Singletary v. State*, 318 So. 2d 873, 876 (Miss. 1975): "The local policeman . . . is also in a very real sense a guardian of the public peace and he has a duty in the course of his work to be alert for suspicious circumstances, and, provided

that he acts within constitutional limits, to investigate whenever such circumstances indicate to him that he should do so." *United States v. West*, 460 F.2d 374, 375-76 (5th Cir. 1972).

¶27. The United States Supreme Court has noted that determining the reasonableness of a detention less intrusive than a traditional arrest depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." *Brown v. Texas*, 443 U.S. at 50, 99 S.Ct. at 2640 (quoting *Pennsylvania v. Mimms*, 434 U.S. at 109, 98 S.Ct. at 332). "Consideration of the constitutionality of seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown v. Texas*, 443 U.S. at 50-51, 99 S.Ct. at 2640. Returning to the case at bar, there was no reason to believe, at the time Officer Palmer stopped Floyd, that the short detention would turn into a more permanent detention, that is, an arrest for DUI. Officer Palmer merely investigated a complaint received from the dispatcher regarding a reckless driver. The public concern served by the seizure is evident - a reckless driver poses a mortal danger to others. There exists in such a situation an absolute necessity for immediate investigatory activity. The severity of interference with individual liberty was minimal - Floyd was required to pull over to the side of the road. Officer Palmer had a duty to investigate the detailed complaint given to the police department concerning a driver who may have been ill, impaired, reckless or dangerous to the public. To cling to a rule which would prevent a police officer from investigating a reported complaint of reckless driving would thwart a significant public interest in preventing the mortal danger presented by such driving.

¶28. The felony/misdemeanor distinction cited in the cases urged by Floyd is not the correct test by which to evaluate whether an investigative stop is reasonable. The question is not whether a driver is suspected of a felony or misdemeanor, but whether a law enforcement officer acts reasonably in stopping a vehicle to investigate a complaint short of arrest. This Court stated in *Singletary*, 318 So. 2d at 876:

> Police activity in preventing crime, detecting violations, making identifications, and in apprehending criminals may be divided into three types of action: . . . (2) Investigative stop and temporary detention: To stop and temporarily detain is not an arrest, and the cases hold that given reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest . . . .

¶29. Though Floyd argues otherwise, the circumstances under which Officer Palmer stopped Floyd were clearly reasonable, and Floyd clearly had "reasonable suspicion, grounded on specific and articulable facts" as required by this Court in *Floyd*, 500 So. 2d at 992. Floyd argues that the stop was unreasonable because Officer Palmer received a dispatch based on a complaint from a third party.

¶30. Reasonable cause for an investigatory stop may be based on an officer's personal observation or on an informant's tip if it bears indicia of reliability. *Adams v. Williams*, 407 U.S. at 147, 92 S.Ct. at 1924. Reasonable suspicion is dependent upon both the content of the information possessed by the detaining officer as well as its degree of reliability. *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed. 2d 301 (1990). Both factors - quantity and quality - are considered in the "totality of the circumstances." *Id.* Here, Officer Palmer received a very specific description of Floyd's vehicle, the precise location of the car, and information regarding exactly what was complained of, that is, reckless driving at a high rate of speed. The report came to Officer Palmer over his radio from the dispatcher. Officer Leflore testified that the complaint came from a named source who had given him information in the past. This was

certainly enough to satisfy both the quantity and quality requirements.

¶31. A case from the Texas Court of Appeals is precisely on point. In *State v. Sailo*, 910 S.W.2d 184 (Tex. App. 1995), while police officers were making a traffic stop, a private citizen drove up and informed police officers that he had seen a possible drunk driver approaching the scene. The informant described the suspect as driving a small, white Toyota pickup truck and stated that the vehicle was approaching the officers. The informant drove off before the officers could take down the informant's name. The officers stopped the vehicle described by the informant <u>even though neither had seen the vehicle commit any traffic violations</u>. The driver was eventually arrested after failing field sobriety tests.

¶32. The driver argued on appeal that the investigative stop was unlawful because the information provided by the unidentified informant was not an adequate ground for the officers to form a reasonable suspicion that criminal activity was occurring. The court noted that a tip by an unnamed informant of undisclosed reliability standing alone will rarely establish the requisite level of suspicion necessary to justify an investigative detention, and that "[t]here must be some further indicia of reliability, some additional facts from which a police officer may reasonably conclude that the tip is reliable and a detention is justified." *Id.* at 188 (*citing White*, 496 U.S. at 329, 110 S.Ct. at 2415-16). The *Sailo* court held, that the informant's complaint contained the requisite indicia of reliability, citing Justice (then Judge) Kennedy's statement in the Ninth Circuit Court of Appeals case, *United States v. Sierra-Hernandez*, 581 F.2d 760 (9th Cir. 1978):

A citizen who confronts an officer in person to advise the officer that a designated individual present on the scene is committing a specific crime should be given serious attention and great weight by the officer. . . . A person who is not connected with the police or who is not a paid informant is inherently trustworthy when he advises the police a crime is being committed.

*Sailo*, 910 S.W.2d at 188 (*citing Sierra-Hernandez*, 581 F.2d at 763). The *Sailo* court also discussed *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed. 2d 527 (1983), in which the Supreme Court stated that a detailed description of the wrongdoing, along with a statement that the event was observed firsthand, entitles an informant's tip greater weight than might otherwise be the case. *Sailo* at 189. The court in *Sailo* thus determined that, in the totality of the circumstances, the investigative stop of the defendant was justified. Cases with like facts and result are *State v. Melanson*, 665 A.2d 338 (N.H. 1995) (unknown caller's report that provided a specific description of a car whose driver was thought to be intoxicated, knowledge of its exact location at the time, and specific information of its movements, reasonably supported the conclusion, for the purpose of determining whether officer had reasonable suspicion to stop vehicle, that the basis of the caller's knowledge was his personal observation of vehicle), and *Commonwealth v. Janiak*, 534 A.2d 833 (Pa. Super. Ct. 1987) (investigatory stop of a vehicle based on radio broadcast that intoxicated individual was driving vehicle in vicinity was proper; vehicle was the only vehicle on road that it was reported to be proceeding from).

¶33. As in *Sailo*, the information given by the informant to Officer Leflore was neither vague as to the type of criminal activity nor imprecise as to the kind of crime being committed. The informant also described the suspect's location with some particularity. Furthermore, the name of the informant in the case at hand was known by Officer Leflore, and Leflore had received complaints from the informant in the past. No evidence is present in the record which should have caused Officer Leflore to doubt the reliability or good faith of the informant. Officer Leflore immediately telephoned the dispatcher, and the same information was relayed to Officer Palmer. There was no link in the chain of communication which was or should have appeared to be

unreliable to Officer Palmer. Officer Palmer confirmed that a vehicle was located where the informant had indicated and matching the description given. In light of the totality of the circumstances, the investigative stop was justified.

> **II. WHETHER INCRIMINATING STATEMENTS MADE BY A SUSPECT DURING A TELEPHONE CONVERSATION WITH HIS ATTORNEY MAY BE USED AGAINST THE DEFENDANT WHEN THE CONVERSATION TOOK PLACE IN THE PRESENCE OF A POLICE OFFICER AND AFTER THE DEFENDANT HAD BEEN PLACED IN CUSTODY.**

¶34. Floyd argues that his Fifth and Sixth Amendment rights to counsel were violated by Officer Palmer's remaining within hearing distance of Floyd's telephone conversation with his attorney and the subsequent use at trial of statements made during that conversation. Floyd's counsel objected to the use of the telephone conversation at trial, but on the grounds that the statements were confidential and thus protected by attorney-client privilege. To this objection, counsel for City of Crystal Springs replied that the communication was not confidential where Floyd was aware of the presence of Officer Palmer at the time the statements were made. The trial judge stated that he would take the objection under consideration and directed the witness, Officer Palmer, to answer the prosecution's questions regarding the telephone conversation. Officer Palmer testified that during the telephone conversation Floyd stated, "yes, I've had a few drinks" and that after Floyd hung up the telephone, he stated to Officer Palmer that he did not want to take the intoxilizer test. No ruling was ever made regarding the objection, and Floyd's counsel never raised the question again to the trial court. Floyd now raises the objection on appeal, apparently abandoning the confidentiality argument and arguing, instead, that the use of the statements at trial violated Floyd's right to counsel.

¶35. Floyd's argument is procedurally barred. Floyd abandoned his objection when he failed to require the trial judge to issue a ruling on the objection. The State submits that this Court should apply its holding in ***Rushing v. State***, 711 So. 2d 450 (Miss. 1998), to the issue at hand. In that case, the defendant was convicted of uttering a forged prescription. The defendant had several prior convictions for forged prescriptions, and, prior to trial, the defense attorney filed a motion in limine seeking to exclude from evidence any mention of prior bad acts or convictions. The trial court never ruled on the motion, and the defendant attempted to raise her objection on appeal. This Court stated:

> There is nothing in the record to indicate whether the motion was ruled on by the court. It is well-established that "[i]t is the responsibility of the movant to obtain a ruling from the court on motions filed by him and failure to do so constitutes a waiver of same." ***Martin v. State***, 354 So. 2d 1114, 1119 (Miss. 1978)(*citing **Grant v. Planters' Bank***, 5 Miss. 326 (1840)).... Thus, we do not hold the trial court in error for not ruling on the motion.

*Id.* at 456. *See also **Wright v. State***, 540 So. 2d 1, 4 (Miss. 1989).

¶36. This principle applies to obtaining rulings on objections as well as on motions. This Court has held that it is the duty of the objecting party to obtain a ruling by the trial court on objections, and that if the record includes no ruling by the trial court, the objections are waived for purposes of appeal. ***Cole v. State***, 525 So. 2d 365, 369 (Miss. 1987) (citing ***Hemmingway v. State***, 483 So. 2d 1335 (Miss.1986); ***Cummings v. State***, 465 So. 2d 993 (Miss.1985)).

¶37. Furthermore, any error in admitting the statement from the telephone conversation is harmless. The proof of impairment offered by the State was so overwhelming that any such error was harmless. This Court has explained that an error is harmless when it is apparent on the face of the record that a fair-minded jury could not have arrived at a verdict other than that of guilty. *Forrest v. State*, 335 So. 2d 900, 903 (Miss. 1976).

¶38. The evidence of Floyd's impairment is so overwhelming that a fair minded jury (or, here, a judge in a bench trial) could have arrived at no verdict other than to find Floyd guilty. Officer Palmer testified, and Floyd does not contradict, that at the time he stopped Floyd's vehicle, Floyd stated that he had been to the County Line beer joint where, by Floyd's own admission, he had been drinking. Floyd also told Officer Palmer that he had been drinking on the way home. There was an opened bottle of vodka, one-fourth of which was missing, on the passenger seat of Floyd's car and a glass on the console of the car. When Floyd exited the vehicle, he staggered, almost fell into the highway, could not stand properly, almost fell over when he tried to fix his pants leg, and spoke with slurred speech, alternating between mumbling and loud speech.

¶39. Additionally, the only statement from the telephone conversation testified to by Officer Palmer was Floyd's statement, "Yes, I've had a few drinks." Floyd had already told Officer Palmer, when Officer Palmer pulled Floyd's car to the side of the road, that he had been to the County Line beer joint where he had been drinking and that he had been drinking on the way home. The statement from the telephone conversation was merely cumulative and is, therefore, harmless.

## CONCLUSION

¶40. This Court affirms the trial court's conviction of Graham Floyd for DUI, first offense. The issues raised by Graham on appeal are without merit.

¶41. Floyd's argument that Officer Palmer could not lawfully stop his vehicle because Officer Palmer did not personally observe the reckless driving is without merit. Officer Palmer had a reasonable suspicion, grounded on specific and articulable facts that Floyd had been driving recklessly. Floyd's argument that his constitutional right to counsel was violated is procedurally barred. Further, any error in admitting Floyd's statements from the telephone conversation was harmless, given the abundance of evidence of Floyd's impairment presented to the trial court and given Floyd's prior statements to Officer Palmer regarding the fact that he had been drinking.

¶42. Therefore, this Court affirms Graham's conviction and the judgment of the Copiah County Circuit Court.

¶43. **CONVICTION OF DRIVING UNDER THE INFLUENCE OF INTOXICATING LIQUOR AND SENTENCED TO PAY A FINE OF $ 672.00 AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, MILLS, WALLER AND COBB, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶44. The majority writes that the information provided by a third party that Floyd was speeding and driving recklessly was sufficient to justify a *Terry* investigative stop. *Terry v. Ohio*, as the majority notes, allows police to make an investigatory stop if the officer has a reasonable suspicion that a person has committed or may be committing a crime. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, because it cannot be said that one who is speeding and/or driving recklessly is likely to be engaging in any crime other than speeding and/or driving recklessly,[1] and one cannot investigate the crime of speeding and/or driving recklessly by stopping the alleged violator, allowing police to conduct an investigative stop under these circumstances stretches the concept of a *Terry* stop too far. Indeed, because the driver who commits no infractions while driving probably does not exist,[2] the majority's opinion gives police carte blanche to search almost every driver on the road. Moreover, the officer in this case, although he was able to maneuver his vehicle behind the car behind Floyd, never observed Floyd speed or drive recklessly. Thus, the obvious conclusion is that the informant's information which formed the basis for the alleged *Terry* stop was not reliable since no speeding or reckless driving occurred within the officer's presence. If the information forming the basis of the stop is not reliable, the information cannot support a warrantless search. *Barton v. State*, 328 So.2d 353, 354 (Miss. 1976).

¶45. The Fourth Amendment to the United States Constitution prohibits both unreasonable searches and seizures. Just as a search must be commensurate with the information which forms the basis for the search (e.g., the police cannot search for a stolen television in a pocketbook),[3] so, too, should a stop be commensurate with its objective. Indeed, this is exactly what the United States Supreme Court held in *Terry* -- an investigative detention is permissible only if (1) "the officer's action was justified at its inception," and (2) "**it was reasonably related in scope to the circumstances which justified the interference in the first place**."*Terry*, 392 U.S. at 20, 88 S.Ct. 1868 (emphasis added). If speeding and/or reckless driving is an indication of no crime other than speeding and/or reckless driving, an investigative stop of a driver alleged to have been speeding and/or driving recklessly is pointless inasmuch as the stop terminates all evidence of the crime. If the officer has not observed the driver speeding and/or driving recklessly, stopping the driver is not going to aid his investigation.

¶46. If the police had themselves observed Floyd violating traffic ordinances, they could have stopped him and seized him long enough to process a citation. The fact that he was observed violating traffic ordinances, however, does not *ipso facto,* give police probable cause to make an investigative stop. In other words, speeding and driving recklessly are not evidence that the driver is likely to be committing other crimes.

¶47. What is lacking here is any reasonable suspicion that Floyd, seen speeding by another motorist, was likely to be engaging in any criminal activity **other than speeding and/or driving recklessly**. As a practical matter, stopping a driver to investigate whether he might have been speeding defies all common sense. Because stopping the driver actually pretermits all evidence that the driver might be speeding, it cannot be said that the stop and search are "reasonably related in scope to the circumstances [alleged speeding] which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1868.

¶48. In *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 488, 142 L.E.2d 492 (1998), the United States Supreme Court reversed a conviction for possession of drugs which had been found in a search incident to a traffic citation. There was no justification for a search of the car where once the speeder was stopped, "all the evidence necessary to prosecute that offense had been obtained. No further evidence of excessive speed was going to be found either on the person of the offender or in the passenger compartment of the car."*Knowles*, 119 S.Ct. at 488.

¶49. The majority argues that "applying the felony/misdemeanor distinction in traffic violation cases would require law enforcement officials to ignore communications of other officials warning of drivers who may be impaired, ill, reckless, or dangerous to the public unless the officer has probable cause to arrest." This is hardly the great concern the majority would have us believe. If an officer is given a report of an impaired driver, he needs only to follow the driver a short distance to determine for himself whether the driver is impaired. Since the officer would have to apprehend the vehicle to stop the car anyway, it should demand no extra effort to require the officer to verify for himself that the suspected bad driver is a bad driver in reality.

¶50. The majority's opinion in this case does more than just make bad law; it threatens the very freedoms upon which this nation was founded. The idea that police officers may stop citizens for no reason other than that they **might** have been speeding is specious. The majority, it seems, would have one give up all right to be free from government intrusion once he enters his automobile. I, for one, cannot agree, and, thus, I dissent.

## SULLIVAN, P.J., JOINS THIS OPINION.

1. Speeding and or other traffic infractions alone do not generally provide a reasonable suspicion that the offender is guilty of driving while intoxicated. *See, e.g.* **State v. Carver**, 577 N.W.2d 245 (Minn.Ct.App. 1998) (speeding and parking vehicle diagonally were not sufficient indicia of intoxication to provide probable cause to arrest defendant for DUI and petty misdemeanor speeding did not provide sufficient probable cause to arrest defendant for DUI); **State v. Rutherford**, 981 P.2d 386 (Or.Ct.App. 1999) (state trooper did not have subjective probable cause to believe that defendant was driving under the influence of intoxicants before he administered field sobriety after stopping defendant for speeding and driving carelessly).

2. Even a minimally competent police officer can follow a car long enough to observe some minor traffic infraction if he is looking for a pretext to stop the vehicle. While we certainly do not endorse this practice, we would be foolish not to recognize that it happens. **People v. Uribe**, 16 Cal,Rptr.2d 122, 129 (1993) (unsafe lane change); **King v. State**, 839 S.W.2d 709 (Mo.Ct.App. 1992).

3. *See, e.g.,* **Cupp v. Murphy**, 412 U.S. 291, 295, 93 S.Ct. 224, 2000, 2003, 36 L.Ed.2d 900 (1973); **Ferrell v. State**, 649 So.2d 831, 833 (Miss. 1995) (police could not examine contents of matchbox in a search for weapons incidental to arrest of driver).