IRVING, J.,
For The Court.
¶ 1. John Fillingane, West American Insurance Company, Southern Guaranty Insurance Co., and Hattiesburg Paint and Decorating Center, Inc. (Fillingane) appeal from a judgment entered by the Circuit Court of Forrest County pursuant to a jury verdict in favor of Siemens Energy & Automation, Inc. and Cooper Industries (Siemens Energy). Fillingane assigns two errors, which we quote verbatim:
(1) Did the trial court err in ruling that plaintiffs’ expert witness, an electrical engineer, could not testify regarding industry standards that were in effect before he became an electrical engineer, because he did not have personal knowledge of these standards at the time they were written?
(2) Did the court err in excluding the 1975 electrical industry standard which was inadvertently not produced in discovery, where the 1986 revision of that standard, containing identical relevant language, was produced in discovery and was, or should have been known to the defendants?
FACTS
¶ 2. On September 1, 1993, a fire occurred at the premises of the Hattiesburg Paint and Decorating Center, Inc. which caused extensive damage to the premises. An investigation indicated that a circuit breaker in the building’s electrical panel had failed to trip when a short developed in a small oscillating fan, and that the failure of this circuit breaker to trip and arrest the electrical current was the likely cause of the fire. John M. Fillingane, the building’s owner, and West American Hat-tiesburg Paint, his insurance company, joined Southern Guaranty, the insurer of the building contents, in filing a products liability suit against the manufacturer of the circuit breaker.
¶ 3. Fillingane sought to recover against Siemens Energy under two theories: (1) the circuit breaker was defectively designed and (2) the circuit breaker failed to contain adequate warnings or instructions.
¶ 4. During trial, Fillingane presented a thirty-five year old expert witness, Dr. Mark Halpin. Dr. Halpin is a doctorate level professor of electrical “engineering. During the trial, he testified to his academic and research experience in electrical engineering. He also testified to his initial involvement in this action which was to test circuit breakers and make internal inspections of molded circuit breakers. He explained how the breakers operated and identified the various parts. He also testified concerning the tripping of the breaker in question. He was able to testify about this due to the tests he had conducted. In addition, he testified that there were points or areas inside the breaker’s design or in its construction which could present limitations on the mechanical movements of the parts of the breaker that would limit it or prevent it from tripping. Furthermore, he testified that a magnetic force could cause erosion of the parts. Siemens Energy objected to this testimony asserting a failure by Dr. Halpin to disclose this specific expert opinion testimony during deposition. However, the court allowed this testimony.
¶5. After Dr. Halpin’s testimony concerning the freezing and binding of the breakers, he was asked how long the information had been known in the electrical industry. He replied that based on information readily available to him, the knowledge of freezing and binding has “been well known in the industry for at least twenty years.” Fillingane’s attorney then asked Dr. Halpin whether the above information was known as early as 1973. At that time, Siemens Energy attorneys objected. Following this objection, Dr. Hal- *739 pin testified, out of the presence of the jury, about the American National Standard Institute (ANSI) and the Institute of Electrical and Electronics Engineers (IEEE) standards. More importantly, he testified that the IEEE standards represent the consensus of knowledgeable opinion and that this information is not only readily available to persons active in the electrical industry but could also be considered a set of “bibles.” He attempted to use a 1975 IEEE standard to clarify the time frame of knowledge available in the industry. Siemens Energy objected. The trial court excluded this evidence, finding that it had not been produced during discovery.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Exclusion of the Testimony of Fil-lingane’s Expert Witness

¶ 6. Fillingane claims that the judge abused his discretion by excluding the testimony of Dr. Halpin regarding the 1974 standards. Fillingane asserts that this “erroneous” exclusion prevented them from establishing an essential element of their ease. Fillingane cites Mississippi’s product liability statute (Mississippi Code Annotated Section 11-1-63) which requires a plaintiff to prove that the defendant “knew, or in the light of reasonably available knowledge, should have known” of the alleged defect in the design. Thus, Fillin-gane argues that Dr. Halpin’s testimony concerning standards in 1974 was essential to meet their burden of imputing knowledge to Siemens Energy in 1974, the year the circuit breaker was manufactured. Fillingane notes that Dr. Halpin was qualified and accepted by the court, without objection, as an expert in electrical engineering. Yet, the trial judge only allowed him to give an opinion as to information published since he has become an expert. The colloquy concerning the matter went as follows:
The Court: I’ll let him testify as to anything that happened when he was — of his own knowledge but something that, like I say, that goes back to the time when he was ten years old I hardly think he would be a competent witness to testify to that.
¶ 7. Fillingane asserts that Mississippi Rule of Evidence 702 contains no provision limiting an expert’s testimony to matters wholly within his personal experience. M.R.E. 702. On the other hand, Siemens Energy asserts that Dr. Halpin’s opinions concerning the 1974 standard were properly excluded because Fillingane failed to disclose during discovery any opinion to be offered by Dr. Halpin regarding the 1974 standard. Siemens Energy also points out that Dr. Halpin testified that he did not know if the IEEE standard existed before 1980.
¶-8. Siemens Energy further argues that Dr. Halpin had no valid basis for his conclusions beyond his own hunch. Siemens Energy contends that Dr. Halpin’s estimation that the industry knew of the possibility of binding in 1975 due to the revision cycles is purely conjecture. Finally, Siemens Energy contends that admission of testimony by Dr. Halpin concerning the 1975 standard would amount to unfair surprise because they were not given a copy of the 1975 version.
¶ 9. We conclude that the trial court did not err in refusing to allow Dr. Halpin to testify to the state of knowledge in the circuit breaker industry in 1974. Mississippi Rule of Evidence 702 allows one to testify in the form of an opinion or otherwise as an expert to information acquired “by knowledge, skill, experience, training, or education.” M.R.E. 702. In addition, Mississippi Rule of Evidence 70S provides *740 that “[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing.” M.R.E. 708.
¶ 10. Dr. Halpin’s testimony was designed to provide a foundation for asserting that knowledge of the industry standards in 1974 could be imputed to Siemens Energy. However, Dr. Halpin was not able to testify from knowledge, skill, training, or education regarding the standard in 1974 regarding the binding aspect of circuit breakers. He possessed no such personal knowledge and had not acquired any by training or education which would include studying treatises on the matter for the pertinent time period. It is clear that Dr. Halpin’s opinion as to the commonality of knowledge of the industry standards in 1974, regarding the binding of circuit breakers, was based only on his knowledge of the chronology of the revision cycles of the standards. Possession of knowledge of the revision cycles is not the same thing as possession of knowledge of the standards. Under questioning from Siemens Energy attorney, Dr. Halpin removed any doubt about the depth or source of his knowledge. He was asked why he had the opinion that the knowledge of binding was known in 1973, and Dr. Halpin replied by reading an excerpt from ANSI/ IEEE standard number 493-1980 which discussed friction. In addition, he testified:
I’m very heavily involved in ANSI IEEE standard development. The standards are developed on a five year rotation. That’s IEEE policy. For the standard to be approved by the standard’s board in 1980, that meant that work essentially had to cease on development of the document probably by the middle of 1978. Now, remember the five year revision cycle that I talked about, '78 minus five is '73.
¶ 11. The logical conclusion sought to be established by Dr. Halpin’s testimony was that the revision cycle in which this standard was developed would have included the time period this breaker was manufactured. He stated that he believed the document dated 1980 regarding the binding and sticking of circuit breakers was inclusive of knowledge in existence in 1973 and 1974. However, when he was asked other questions, he seemed unsure as reflected in the following colloquy:
Mr. Turner: I think my last question was: Was it known as early as 1973?
The Court: And your answer?
Dr. Halpin: Based on the materials available to me, I cannot conclude with certainty that this information was known in 1973, but I can say that I believe that information was probably known in 1973.
¶ 12. Dr. Halpin failed to testify based on knowledge, education, skill, or training of how IEEE standards were developed before his involvement. Dr. Halpin simply based his beliefs of the existence of industry knowledge in 1974 on his knowledge of present revision cycles since he had become involved with ANSI and IEEE development. He could have met the requirements of Mississippi Rule of Evidence 702 by simply educating himself about the development of ANSI/IEEE standards which existed before his involvement as allowed by Mississippi Rule of Evidence 703. As previously observed, Rule 703 provides that:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the *741 subject, the facts or data need not be admissible in evidence.
M.R.E. 703. No evidence exists in this record which indicates that Dr. Halpin acquired knowledge of the 1974 industry standards by reading and studying the standards in existence at that time. Although, Dr. Halpin did have other books with him which he claimed predated World War I, he failed to give any testimony as to his expert knowledge of the standards which may have existed in the relevant year.

2. Exclusion of the 1975 Standard

¶ 13. Fillingane admits to its inadvertent failure to disclose the 1975 standard. However, Fillingane contends that the admittance of the 1975 standard would not result in unfair surprise because the 1986 revision, which was given in discovery, has identical relevant language. Furthermore, Fillingane asserts that Siemens Energy was aware that Fillingane would discuss ANSI/IEEE standards at least ten to fifteen years older than the documents produced. Fillingane bases this statement on the fact that Siemens Energy knew that Fillingane’s burden was to impute industry knowledge to Siemens Energy in 1974.
¶ 14. Finally, Fillingane asserts that the IEEE standard should have been allowed under Mississippi Rule of Evidence 803(18), the “learned treatise” exception to the hearsay rule. The extended argument is that, because the language of the 1975 standard is identical to the 1986 standard (which was tendered during discovery), Fillingane essentially satisfied the requirements of the rule.
¶ 15. Siemens Energy asserts that the trial court properly excluded the 1975 electrical industry standard because it amounted to “trial by ambush.” To support this assertion, Siemens Energy points out that the 1975 standard was not given to them and the court until the noon hour of the last day of trial. Lastly, Siemens Energy asserts that this standard could not be allowed as a “learned treatise” because it was not “disclosed to the opposing party without charge pursuant to discovery.” M.R.E. 803(18).
¶ 16. We agree with Fillingane that— because the relevant language in the excluded 1975 standard is identical to the language in the 1986 standard — a reasonable argument can be made that substantial compliance occurred when the 1986 standard was provided during discovery. However, the rule is clear in requiring that “[tjreatises used in direct examination must be disclosed to opposing party without charge pursuant to discovery.” It is not disputed that Dr. Halpin attempted to use the 1975 standard during direct examination.
¶ 17. The Mississippi Supreme Court has stated “[t]he standard of review regarding admission of evidence is abuse of discretion. Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party.” Floyd v. City of Crystal Springs, 749 So.2d 110 (¶ 12) (Miss.1999).
¶ 18. The fact that the relevant language in the 1975 IEEE standard was identical to the language in the 1986 IEEE does not prove that Siemens Energy was not unfairly surprised or prejudiced by the later than eleventh hour production of the 1975 standard. While Fillingane is probably correct that Siemens Energy knew or should have known that Fillingane would be attempting at trial to discuss or present documents regarding the standard for the relevant year, possession of such knowledge by Siemens Energy does not excuse Fillingane’s obligation to provide the appropriate discovery. Furthermore, it is equally plausible that Siemens Energy *742 may have surmised that Fillingane could not meet their burden of proof because of the failure to provide discovery of this critical piece of evidence. In any event, there would have been no need for Siemens Energy to be prepared to rebut the evidence. Had the evidence been allowed, Siemens Energy surely would have been prejudiced as a result of the immediate need to provide expert rebuttal testimony on this critical issue. Under these facts, we cannot conclude that the trial judge abused his discretion in not allowing the 1975 standard into evidence.
¶ 19. Finally, we note that even if the 1975 standard had been allowed into evidence, its admission would not have satisfied Fillingane’s obligation to prove what knowledge existed in the circuit breaker industry in 1974 regarding the binding of circuit breakers. That such knowledge became widely available and known in 1975 with the publication of the 1975 standard does not necessarily mean that it enjoyed industry-wide dissemination prior to 1975. For the reasons presented, we affirm the trial judge’s exclusion of the 1975 standard.
¶ 20. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
McMILLIN, C.J., KING and SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, and CHANDLER, JJ., concur. BRANTLEY, J., dissents without separate opinion.