# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-01201-COA

**JERRY ALLEN TAYLOR, SR. A/K/A JERRY ALLEN TAYLOR A/K/A JERRY TAYLOR**                                    APPELLANT

v.

**STATE OF MISSISSIPPI**                                    APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/06/2023 |
| TRIAL JUDGE: | HON. MARK SHELDON DUNCAN |
| COURT FROM WHICH APPEALED: | SCOTT COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES HOWARD MURPHY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ABBIE EASON KOONCE |
| DISTRICT ATTORNEY: | STEVEN SIMEON KILGORE |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/12/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND McCARTY, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.     On March 28, 2023, Jerry Allen Taylor was indicted by a Scott County grand jury for one count of trafficking methamphetamine in violation of Mississippi Code Annotated section 41-29-139(g) (Rev. 2018). On October 10, 2023, after a jury trial, Taylor was found guilty and sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections without parole eligibility and fined $10,000.00. Taylor's post-trial motion was denied, and he now appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2.     At trial, the State called Captain Willie Anderson of the Scott County Sheriff's

Department as the first witness to testify. He testified that the sheriff's department was investigating a string of "approximately . . . 16 or 17 burglaries" of structures such as "sheds, houses, [and] houses that [were] under construction." The sheriff's department developed five suspects "in this particular string of burglaries" but arrested only three out of the five suspects. Captain Anderson testified that the sheriff's department arrested Drucilla McKee, Zachary Crocker, and Brittany Crocker. The three suspects informed the sheriff's department that some of the stolen property was located at Jerry Taylor's residence located at 5297 Highway 35 North. Captain Anderson stated, "Once obtaining this information from these particular suspects, I applied for a search warrant."

¶3.    Taylor's counsel moved to suppress all the evidence seized from officers executing a search warrant at his house. The court removed the jury from the courtroom and conducted a hearing on the motion. At the suppression hearing, Captain Anderson testified that he signed the affidavit for the search warrant and was placed under oath by Justice Court Judge Bill Freeman. Captain Anderson testified that he provided details in his warrant as to what items he believed to be at Taylor's residence. Captain Anderson testified that due to the information received from the three suspects, the items that were to be searched for were "a Honda generator[,]" "tools[,] and also the possibility of drugs." Captain Anderson testified that he believed these items from the burglaries would be at Taylor's residence because he felt "that [Drucilla McKee, Zachary Crocker, and Brittany Crocker] were being trustworthy and honest with [him,]" and they had already correctly informed the sheriff's department of other locations where they had taken stolen property. Captain Anderson also testified that he

2

spoke with the three suspects individually and that "because of the nature of the case and how the jail [was] configured, these individuals were placed in different locations inside [the] jail facility." Therefore, they did not "have any communication with each other." He explained in his testimony that the suspects "specifically" stated they had "drug problems" and would take the stolen property to "Mr. Taylor's house and trade[] for drugs." Once Captain Anderson was informed by the suspects that the stolen items may be at Taylor's residence, he spoke with the sheriff's department's "drug captain, Mr. Brad Ellis" because "[t]here [had] been some surveillance prior to this on [Taylor's] house." Ellis then confirmed the suspect's statement regarding the location of Taylor's residence and was able to "pinpoint the exact location" of Taylor's home. Captain Anderson testified that the location of Taylor's residence, including the latitude and longitude, and an aerial map was provided in the search warrant.

¶4.     Captain Anderson continued to testify and explained that once the search warrant was signed, he went with "other deputies . . . to serve the search warrant." Once Captain Anderson and the other deputies arrived at the property, they encountered Taylor's son. Captain Anderson testified that Taylor's son told them that Taylor was not home because he was at work. The deputies then breached the front door since there was a padlock on the door, and Taylor's son did not have a key. Once inside, the officers found "a substantial amount of property," including "over a pound of methamphetamine," in a safe located in the master bedroom.

¶5.     On cross-examination Captain Anderson testified that the three suspects gave written

statements. Zachary Crocker gave his statement on January 1, 2022, Drucilla McKee gave her statement on January 4, 2022, and Brittany Crocker gave her statement on January 6, 2022. Captain Anderson signed each statement and later testified that McKee's written statement did not state that she traded the items she stole from the string of burglaries for meth because "[s]he verbally stated" it. He explained, "[N]aturally, with any statement[,] suspects are not going to write down exactly everything that they tell you." He also testified that McKee and the other suspects took him to the locations where the stolen items were traded or sold, but Captain Anderson did not state that in his underlying facts and circumstances or the affidavit he gave to Judge Freeman. Captain Anderson said that he "gave Judge Freeman a verbal" explanation instead of typing it in the statement, reasoning that "it is not a necessity all the time" because if "something else additionally comes up, you can verbally give that information to a judge at that particular point in time."

¶6.     Lastly, in Captain Anderson's cross-examination, he testified that he had never before used any of the three suspects to develop a case, nor had he used them as confidential informants. He explained, however, that he knew the suspects were reliable because they "had shown [Captain Anderson] the locations of where they had taken [the stolen] property," and he informed Judge Freeman of "some of the locations" he went to with the suspects.

¶7.     The State called Captain Brad Ellis as their next witness at the suppression hearing. Captain Ellis participated in the execution of the search warrant at Taylor's residence. He testified that he "assisted with the breach and with the search of the property." While

4

executing the search warrant, Captain Ellis "located [a] lockbox[1] and took it outside and opened it and found" a drug-like substance inside the lockbox. Captain Ellis testified that he put the substance in a bag, labeled it, and put the case number and his name on it.

¶8.     During Captain Ellis's cross-examination, he testified that he was not involved in securing the search warrant. He further testified that before the string of break-ins, he was conducting surveillance in the area where Taylor lived. However, no reports were generated as a result of the surveillance because the sheriff's department "didn't have anything to report on at that time."

¶9.     The State's final witness for the suppression hearing was Scott County Justice Court Judge Bill Freeman. Judge Freeman testified that he signed the January 10, 2022 search warrant that Captain Anderson brought to him for review. Judge Freeman testified that once Captain Anderson presented him with the information, he placed Captain Anderson under oath, and Captain Anderson signed the paper with the facts and circumstances presented to Judge Freeman. Judge Freeman also testified that he granted the search warrant based on probable cause "because of three different reports" in the information presented to him.

¶10.    On cross-examination, Judge Freeman testified that he did not recall Captain Anderson informing him of anything outside of what was in the document when the following colloquy took place:

**Attorney:**      Okay. So everything you considered in whether to sign that warrant was in that packet of documents. Correct?
**Judge Freeman:** Right. That's the way it has to be for a search warrant.

---

[1] Captain Ellis's reference to the "lockbox" is the same item that Captain Anderson referred to as a "safe."

|  |  |
|---|---|
|  | We just can't make things up or talk about things and just -- every time we sign a search warrant, we go with what's in the search warrant. |
| **Attorney:** | What's in the actual documents, right? |
| **Judge Freeman:** | Correct. |
| **Attorney:** | You don't go by anything verbally said to you by anybody? |
| **Judge Freeman:** | No, sir. That's not right to do that. |

¶11. After Judge Freeman testified, the court ruled on the motion to suppress the search warrant. The court stated, "It's my opinion that considering the totality of the circumstances that Judge Freeman had probable cause to the issuance of the search warrant and whatever was found as the fruits of that search were legally obtained."

¶12. The jury was brought back into the courtroom, and the trial resumed. Captain Anderson was brought back on the stand to testify. Captain Anderson testified to the jury the same facts he relayed in the suppression hearing. He testified that on the day after the search warrant was executed, Jerry Taylor "came to the sheriff's department" and "turned himself in." Captain Anderson testified that after Taylor received his *Miranda* warnings, Taylor stated that "all the drugs [are] mine," and he explained that "he used it for personal use because of all the medical problems that he ha[d]."

¶13. After all the witnesses testified, the jury found Taylor guilty of trafficking methamphetamine in violation of Mississippi Code Annotated section 41-29-139(g). Taylor was sentenced to serve fifteen years in the custody of the Mississippi Department of Corrections without parole eligibility. Aggrieved, Taylor raised a single issue on appeal: whether the trial court erred by denying Taylor's motion to set aside the search warrant and suppress evidence derived from it.

6

**STANDARD OF REVIEW**

¶14.   The Mississippi Court of Appeals applies "a mixed standard of review" when reviewing a trial court's denial of a motion to suppress. *Gillett v. State*, 56 So. 3d 469, 482 (¶21) (Miss. 2010) (citing *Dies v. State*, 926 So. 2d 910, 917 (Miss. 2006)). "Determinations of reasonable suspicion and probable cause are reviewed de novo." *Id.* (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 113 (¶11) (Miss. 1999)). "However, this Court should 'take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Id.* (quoting *Ornelas*, 517 U.S. at 699)). "Thus, this Court is restricted to a de novo review of the trial judge's findings using the applicable 'substantial evidence'/'clearly erroneous' standard." *Id.* (citing *Floyd*, 749 So. 2d at 113 (¶11)). Lastly, the Court "reviews the admission or exclusion of evidence for abuse of discretion." *Id.* (citing *Floyd*, 749 So. 2d at 113 (¶12)).

**ANALYSIS**

¶15.   Taylor argues that the trial court erred in denying his motion to suppress the evidence derived from the executed search. He argues the search warrant and underlying facts lacked information that any of the three suspects who provided information in support of the search warrant were reliable and trustworthy, or that had they had ever provided reliable information to the police in the past. He claims the three suspects were confidential informants and must therefore be shown to be reliable.

¶16.   "A search warrant may only be issued when the police have demonstrated probable

cause by introducing evidence of underlying facts and circumstances before the magistrate granting the warrant." *Barrett v. Miller*, 599 So. 2d 559, 566 (Miss. 1992). Probable cause exists when the facts and circumstances known to an officer—or based on reasonably trustworthy information—are sufficient to lead a person of average caution to believe that a crime has been committed and that a specific individual is responsible. *Id.* (citing *Bevill v. State*, 556 So. 2d 699, 712 (Miss. 1990)). The Mississippi Supreme Court explained probable cause in *Rooks v. State*, 529 So. 2d 546, 554-55 (Miss. 1988), by stating:

> It is thus incumbent upon all judges of this State to scrupulously examine the facts in each case, make a careful evaluation, and in their own best judgment gleaned from life's experiences determine whether probable cause existed for a particular search or issuance of a magistrate's search warrant. It is not what some officer thought, it is not some conduct that was simply unusual, not some conduct which simply roused the suspicion that illegal activity could be afoot when there was at the same time just as likely a possibility that nothing at all illegal was transpiring. Rather, it must be information reasonably leading an officer to believe that then and there contraband or evidence material to a criminal investigation would be found.

"The supreme court has stated that doubtful or marginal cases regarding a magistrate's finding of probable cause should be resolved in favor of a search warrant." *Pittman v. State*, 904 So. 2d 1185, 1190 (¶7) (Miss. Ct. App. 2004) (citing *Davis v. State*, 660 So. 2d 1228, 1240 (Miss. 1995)). Taylor attacks the search warrant by alleging that the judge improperly relied on the information provided to him in finding probable cause. Taylor seeks to classify the three suspects who provided information to the police as confidential informants and not eyewitnesses.

¶17.    The case *Walker v. State*, 473 So. 2d 435 (Miss. 1985), provides guidance and instruction on the contended issue. In *Walker*, the defendant was convicted of shooting a

8

firearm into a building usually occupied by persons. *Id.* at 436. Shirley Jones witnessed Walker and another individual, Kenneth Painter, shooting into the Jackson Advocate building. *Id.* Jones identified Walker as the driver of the vehicle involved in the shooting, leading to a search warrant being issued for Walker's residence, where a large assortment of guns and ammunition were seized. *Id.* at 437. Ballistic tests confirmed that one of the guns found at Walker's residence had been used to shoot bullets into the Jackson Advocate building. *Id.* Walker challenged the validity of the search warrant, arguing that the affidavit did not establish probable cause. *Id.* He cited deficiencies such as the reliability of the eyewitness, hearsay issues, and the credibility of a confidential source. *Id.* The court applied the "totality of the circumstances" test and found that the affidavit provided sufficient information for the magistrate to determine probable cause. *Id.* at 438. The court explained that "when information is furnished by an eyewitness rather than from an informant, there is no need to show the party supplying the information was a credible person." *Id.* (citing *Foley v. State*, 348 So. 2d 1034 (Miss. 1977); *Holt v. State*, 348 So. 2d 434 (Miss. 1977); *Wolf v. State*, 281 So. 2d 445 (Miss. 1973)). "The rationale for the victim or eyewitness exception is that the statements of such eyewitnesses are based on their own observation and thus are not likely to reflect mere 'idle rumor or irresponsible conjecture.'" *Id.*

¶18.    Here, the three suspects, Drucilla McKee, Zachary Crocker, and Brittany Crocker were able to inform the sheriff's department that some of the stolen property was located at Jerry Taylor's residence located at 5297 Highway 35 North because they were the ones who took the property to Taylor's residence. Brittany's written statement to the police explained

that after they burglarized a house, the three suspects "sold the stolen stuff to Jerry Taylor." Drucilla's statement explained that "all the stuff [they stole] ended up at the pawnshop except for the generator. It ended up at a buddy of mines. Jerry Taylor's." Lastly, Zachary's written statement reveals that after they stole a few items, he, Drucilla, and Brittany "loaded everything up and took [it] to Jerry Taylor's and sold [him the items]." Captain Anderson's testimony provided the judge with probable cause. It is irrelevant that none of the three suspects were "reliable" or had ever provided reliable information in the past. They were eyewitnesses to the crime since they were the ones who committed the crime. Therefore, there is no need to show the party supplying the information was a "credible person." *See id.* at 438. The trial court judge did not err in denying Taylor's motion to suppress the evidence derived from the executed search.

## CONCLUSION

¶19. The trial court judge did not err in denying Taylor's motion to suppress the evidence. The information the police obtained and used was "furnished by an eyewitness rather than from an informant" and therefore obviates the "need to show the party supplying the information was a credible person." *Id.*

¶20. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., McDONALD, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR. WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.**

10