GRIFFIS, P.J.,
for the Court:
¶ 1. Carl Richard Cook appeals his conviction of misdemeanor driving under the influence (DUI), first offense. Cook argues that the court applied an erroneous Fourth Amendment standard on uncorroborated anonymous tips and erred when it considered constitutional issues to be waived at trial. We find no error and affirm.
STATEMENT OF FACTS
¶ 2. The facts of this case are not in dispute. On March 12, 2011, Reservoir Patrol Officer Timothy Ware of the Pearl River Valley Water Supply District was on duty in the area of Northshore Parkway and Timber Lake Campground in Rankin County, Mississippi. Officer Ware received a call from the Reservoir patrol dispatch to “be on the lookout” (BOLO) for a vehicle that was driving erratically and the driver of the vehicle possibly flashing a badge of some sort.
¶ 3. Officer Ware did not know who made the initial call to law enforcement. To his knowledge, the “tip” was from an anonymous caller and was uncorroborated. The call described a gray Chevrolet Avalanche, and gave the license-plate number. Officer Ware saw a vehicle that matched the description he received. He turned his patrol vehicle around and proceeded behind the suspect Avalanche. Officer Ware observed the Avalanche for a short period of time, though he did not observe the vehicle driving erratically at that time, nor did he observe the driver flashing a badge or committing any crimes.
¶ 4. Deputy Fred Lovett of the Rankin County Sheriffs Office was also in the area when the BOLO came over both the Reservoir patrol dispatch and the Rankin County Sheriffs dispatch. Deputy Lovett met the Avalanche head on. He then turned around and got within “a couple” of car lengths behind Officer Ware and the Avalanche.
¶ 5. Officer Ware initiated a stop on the Avalanche on Church Street in the Reservoir area. Based on subsequent interactions between Officer Ware, Deputy Lo-vett, and Cook, Cook was arrested for DUI, first offense.
¶ 6. Cook was convicted of misdemeanor DUI, first offense, in violation of Mississippi Code Annotated section 63-ll-30(l)(a) (Supp.2012), in the Rankin County Justice *1091 Court. Cook appealed and received a trial de novo before the Rankin County County Court. In a non-jury trial before the county judge, Cook’s counsel moved to dismiss the case at the conclusion of the State’s case-in-chief. Cook argued that the BOLO that led to the investigatory stop violated his Fourth Amendment rights against illegal search and seizure, as it was based on an anonymous tip that lacked sufficient indicia of reliability. The county judge denied the motion and entered a detailed order overruling the motion to dismiss. The county judge also entered a judgment of conviction.
¶ 7. Cook then appealed his conviction to the Rankin County Circuit Court. As error, Cook argued that the county judge erred in the application of the Fourth Amendment standards regarding uncorroborated anonymous tips. The circuit court entered an opinion and order that affirmed the county court’s conviction. It is from this conviction that Cook now appeals.
ANALYSIS

1. Whether the constitutional issues were waived at trial.

¶ 8. On appeal, the circuit judge made a sua sponte finding that the Fourth Amendment issue was procedurally barred from review on appeal. In the opinion and order, the circuit judge ruled that “[Cook] first raised the issue of constitutionality of the traffic stop of [Cook] after the State had rested its case-in-chief in the form of a motion to dismiss. The evidence sought to be suppressed had been introduced, without objection, and the issue was thereby waived.” Cook takes issue with this finding. He argues that the issue was presented to and decided by the county court; therefore, it was neither waived nor procedurally-barred.
¶ 9. This case was appealed from justice court to the county court for a trial de novo. Under Uniform Rule of Circuit and County Court 12.02(C), Cook was not entitled to a jury trial. As such, the case was tried anew before the county judge without a jury. During the trial, the facts about the stop based on the anonymous tip were elicited, without objection. At the .close of the State’s case, and before the trial concluded, Cook moved to dismiss the charge based on the alleged constitutional violation; The county judge recognized the issue and ordered briefs on the issue. After receiving those briefs, the county judge wrote a detailed ten-page opinion specifically on this issue.
¶ 10. The supreme court “has consistently held that failure to make a contemporaneous objection constitutes waiver of an issue on appeal.” Redmond v. State, 66 So.3d 107, 110-11 (¶ 11) (Miss.2011). The problem with the State’s argument is that the county judge clearly saw this issue as properly presented and considered the issue in the opinion and order that decided the case. If we were to accept the circuit judge’s conclusion, we would also have to apply the waiver to the State. Clearly, the State waived the issue when the State did not present it to the circuit judge on appeal.
¶ 11. The circuit court erred when it determined that this issue was waived. This issue was clearly presented to the county court, and the county judge had no issue with the timing of Cook’s objection. The issue was properly preserved for review on appeal. Because this issue does not resolve the appeal, we consider the issue that will decide the case.

2. Whether the county judge erred in the application of Fourth Amendment standards regarding uncorroborated anonymous tips.

¶ 12. Cook argues that Officer Ware initiated the stop without probable *1092 cause or reasonable suspicion. Therefore, all evidence from the seizure was inadmissible as “the fruit of the poisonous tree.”[1]
¶ 13. In Brown v. State, 19 So.3d 85, 89 (¶ 9) (Miss.Ct.App.2008), this Court articulated the proper standard of review:
The analysis of whether there has been an unlawful seizure is subject to a mixed standard of review. Dies v. State, 926 So.2d 910, 917 (¶ 20) (Miss.2006). The determination of the existence of probable cause is reviewed de novo. Id. (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). However, that de novo review is limited to the “trial judge’s decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Id. (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113 (¶ 11) (Miss.1999)). The basic elements of “a determination of probable cause will be the events which occurred leading up to the search, and then the decision whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause.” Ornelas, 517 U.S. at 696, 116 S.Ct. 1657. “In determining whether evidence should be suppressed, a trial court’s findings of fact are not disturbed on appeal absent a finding that the ‘trial judge applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.’ ” Clair v. State, 845 So.2d 733, 734-35 (¶ 4) (Miss.Ct.App.2003) (quoting Taylor v. State, 733 So.2d 251, 255 (¶ 18) (Miss.1999)).
¶ 14. Although our review of the existence of probable cause is de novo, we must look to the trial judge’s findings of fact. Dies, 926 So.2d at 917 (¶ 20). The county judge made the following factual findings:
On the afternoon of March 12, 2011, Officer Timothy Ware ... and Deputy Fred Lovett ... heard a BOLO ... for a vehicle alleged to be driving erratically and/or recklessly, flashing its headlights at other motorists, and “flashing” what was purported to be a badge of some type in an apparent attempt to pull over other motorist(s). That BOLO, which came to both officers via official police radio channels, contained very specific information, including the make, model, color, and license tag number of a particular vehicle which was allegedly engaged in the potentially illegal conduct. The operator of the vehicle was also described in general terms in the BOLO. Finally, the area where the strange driving conduct was occurring was described with specificity[,] ... an area within the jurisdiction of both [officers].
Almost simultaneously, both officers spotted a vehicle matching the precise description given in the BOLO, down to the exact license number. Contact with that vehicle was made in the [officer’s jurisdiction], the license number was verified by Officer Ware, and a traffic stop was immediately initiated by him, followed closely by back-up from Deputy Lovett. It is undisputed that Officer Ware did not personally observe any traffic violations by the subject vehicle and its operator prior to initiating the traffic stop. Upon the officers’ ap *1093 proach to the vehicle, many indicia of [DUI] were immediately observed by them, including: smell of an intoxicating beverage, slurred speech, and disorientation of the operator. Further, within the first few moments of the encounter, [Cook] admitted to having consumed alcoholic beverage and to having “flashed” a business card, not a badge, at other motorist(s). [Cook] also had “watery” eyes, swayed in a circular motion upon exit, and held on to the vehicle for support after exiting. A[p]ortable [b]reath [t]est (PBT) was administered to [Cook], and it registered positive for the presence of alcohol. Finally, Officer Ware reported that [Cook] was extremely nervous and disoriented throughout the original encounter and declined to take the Intoxilyzer 8000 test back at the station, stating that he “ ‘probably would not pass’” that test. For those and other reasons not mentioned herein, the court found proof beyond a reasonable doubt that [Cook] was, in fact, operating a motor vehicle while under the influence of alcohol.
¶ 15. The county judge’s conclusions of law relied primarily upon the Mississippi Supreme Court’s decision in Floyd, 749 So.2d at 110. The county judge also included the following language from Floyd, where the court held:
[G]iven reasonable circumstances an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest.... Such an investigative stop of a suspect may be made so long as an officer has “a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a felony” ... or as long as the officers have “some objective manifestation that the person stopped is, or is about to be engaged in criminal activity.”
Id. at 114 (¶ 16) (citations omitted). Applying Floyd, the county judge concluded:
In the instant case, the BOLO carried information about reckless/erratic driving. However, it included the additional information that the driver of the vehicle had been flashing his lights at other motorists and flashing what appeared to the reporter in this case to be some type of badge. Not only were these officers confronted with a report of dangerous driving conduct, but they were also alerted to the very real possibility that someone might be impersonating a law enforcement officer and attempting to pull over unsuspecting members of the motoring public. If there was ever an ambiguous situation which warranted immediate investigation, this was such a situation. The report of reckless driving was enough. As the Court held in Floyd, ... “[t]o cling to a rule which would prevent a police officer from investigating a reported complaint of reckless driving would thwart a significant public interest in preventing the mortal danger presented by such driving.” Id. Add to that the potential criminal nature of the other bizarre conduct described in the BOLO and the potential danger to the public from one pretending to be a law enforcement officer, and the officers in this case could have been outright derelict in the duty to protect the public had they not acted swiftly as they did here.
It should also be noted that the information contained in the BOLO in the instant case was very specific. The offending vehicle was de'scribed by make, model, color, exact license number, and location. Before making the stop, the officers verified every one of those facts as being present in [Cook]’s vehicle. *1094 Under the totality of those circumstances, the balancing test here goes strongly in favor of the law enforcement officers, particularly compared to the brief intrusion into the travels of [Cook] for purposes of resolving the obviously ambiguous situation described in the BOLO. According to the credible testimony, the interaction with [Cook] following the stop would likely have been very brief but for the indicia of intoxication displayed by [Cook] immediately upon contact with the officers. The fact that things went rapidly and steadily downhill for [Cook] following that contact does not enter the equation; what matters is what happened before the stop.
[[Image here]]
Under all the circumstances of this case, these authorities are unavailing, this court finding that the facts herein not only allowed but in effect mandated the law enforcement action taken here via investigatory stop. The details of the BOLO, and the officer’s confirmation of those details within minutes by spotting the exact vehicle exactly where the BOLO had stated it would be, create the constitutionally mandated “sufficient in-dicia” of reliability.
¶ 16. Cook argues that Officer Ware stopped him based solely on the anonymous BOLO tip he received over the radio, and nothing else. He claims that it was error for the county judge to rely on Floyd, 749 So.2d at 114 (¶ 16). In doing so, Cook contends that the county judge ignored over a decade of Fourth Amendment cases that require a different conclusion.
¶ 17. The Fourth Amendment to the United States Constitution provides that an individual has the right to be free from unreasonable searches and seizures. “The existence of ‘probable cause’ or ‘reasonable grounds’ justifying an arrest without a warrant is determined by factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act. The determination depends upon the particular evidence and circumstances of the individual case.” Jones v. State, 993 So.2d 386, 392 (¶ 10) (Miss.Ct.App.2008) (citation and internal quotation omitted). The United States Court of Appeals for the Fifth Circuit has held:
A warrantless arrest is lawful if “at the moment the arrest was made, the officers had probable cause to make it — if at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person]in believing that the petitioner had committed or was committing an offense.”
United States v. Johnson, 445 F.3d 793, 796 (5th Cir.2006) (quoting Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).
¶ 18. In Floyd, Officer Gerome Leflore, of the Crystal Springs Police Department, was given a tip from David Rogers that an antique red Mustang convertible was headed into town at a high rate of speed. Floyd, 749 So.2d at 112 (¶ 4). Rogers had given Officer Leflore tips before. Id. Officer Leflore was off-duty. Id. He called the tip in to the department’s dispatcher, who then relayed the information from this known source to the rest of the police department. Id. at (¶¶ 4-5). Officer Chris Palmer was on duty, and he pulled over an antique red Mustang that he found in Crystal Springs. Id. at (¶ 5). Thereafter, Graham Floyd, the driver of the Mustang, was arrested and convicted of DUI, first offense. Id. at 113 (¶ 9). The court held:
Reasonable cause for an investigatory stop may be based on an officer’s per *1095 sonal observation or on an informant’s tip if it bears indicia of reliability. Reasonable suspicion is dependent upon both the content, of the information possessed by the detaining officer as well as its degree of reliability. Both factors— quantity and quality — are considered in the “totality of the circumstances.” Here, Officer Palmer received a very specific description of Floyd’s vehicle, the precise location of the car, and information regarding exactly what was complained of, that is, reckless driving at a high rate of speed. The report came to Officer Palmer over his radio from the dispatcher. Officer Leflore testified that the complaint came from a named source who had given him information in the past. This was certainly enough to satisfy both the quantity and quality requirements.
Id. at 118 (¶ 30) (internal citations omitted).
¶ 19. One year after Floyd, the United States Supreme Court decided Florida v. J.L., 529 U.S. 266, 268, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000). There, law enforcement received an anonymous tip that a young black male was standing at a particular bus stop wearing a plaid shirt and that he was carrying a gun. Id. A law enforcement officer arrived at the bus stop six minutes later and found three young black males. Id. The officer frisked the one in the plaid shirt and found a gun. Id. The record did not include an audio recording of the tip, and the informant was anonymous. Id. The Supreme Court unanimously determined that the search was invalid under the Fourth Amendment. Id. at 274, 120 S.Ct. 1375. The Court held that the anonymous tip did not exhibit sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop, as the anonymous call left the police without means to test the informant’s knowledge or credibility, where the unknown and unaccountable informant neither (1) explained how the informant knew about the gun, nor (2) supplied any basis for believing that the informant had inside information. Id. at 271, 120 S.Ct. 1375.
¶ 20. The Court also held that
[a]n accurate description of a subject’s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.
Id. at 272, 120 S.Ct. 1375.
¶ 21. In Baker v. State, 991 So.2d 185, 187 (¶ 7) (Miss.Ct.App.2008), this Court held that a call by an anonymous tipster about several people in a home “cooking drugs,” which led to the seizure of the necessary ingredients for methamphetamine and arrest for the illegal possession and intent to distribute methamphetamine, was reliable enough to provide reasonable suspicion that warranted further investigation by the police that led to the lawful seizure and arrest, The Court determined that the anonymous tip contained sufficient evidence to warrant further investigation because (1) the caller gave fresh information about the incident in question as she had just left the residence when she saw people cooking drugs; and (2) the deputies were familiar with Baker’s address because they had responded to drug-related and domestic incidents at his residence in the past. Id. This Court considered the following legal principles:
Baker points us to Florida v. J.L., 529 U.S. 266, 270, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000), which states that *1096 “an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity.” (quoting Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). However, the United States Supreme Court has also stated that “some tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of a suspect would be authorized.” Adams v. Williams, 407 U.S. 143, 147, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Further, this Court has stated that “an officer may stop and detain a person to resolve an ambiguous situation without having sufficient knowledge to justify an arrest.” Linson v. State, 799 So.2d 890, 893 (¶ 8) (Miss.Ct.App.2001) (quoting Estes v. State, 533 So.2d 437, 441 (Miss.1988)).
Baker, 991 So.2d at 187 (¶ 8). The Court concluded that the trial judge correctly found “that this was an instance that required further investigation” of the anonymous tip. Id.
¶ 22. Here, we recognize the standard of review requires that we affirm the county judge’s decision unless we find that “he applied an incorrect legal standard, committed manifest error, or made a decision contrary to the overwhelming weight of the evidence.” Brown, 19 So.3d at 89 (¶ 9) (citations omitted). The county judge applied the correct legal standard, and we do not find that he committed manifest error or made a decision contrary to the overwhelming weight of the evidence. There is simply no case that holds that a law enforcement officer may not make a stop based on an anonymous tip. Instead, here, the anonymous tip was suitably corroborated to provide reasonable suspicion for an investigatory stop. Officer Ware and Deputy Lovett received information over the police radio about reckless and erratic driving by a driver who was flashing his lights at motorists, flashing what appeared to be a badge, and trying to get motorists to pull over to the side of the road. The tip reported conduct that could be considered reckless driving and impersonating a law enforcement official. The officers were, therefore, justified in making an investigatory stop to resolve the ambiguous situation. Further, the tip bore indicia of reliability, as the details of the tip were corroborated when the exact vehicle was spotted where it was stated it would be in the tip, not to mention that the driver of the car was visibly intoxicated when the officers stopped him. Because the investigatory stop was legally justified, as it was not in violation of the Fourth Amendment, Cook’s conviction for misdemeanor DUI was lawful. Therefore, we find that this issue has no merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY OF CONVICTION OF DRIVING UNDER THE INFLUENCE, FIRST OFFENSE, AND SENTENCE OF FORTY-EIGHT HOURS IN THE RANKIN COUNTY JAIL, WITH FORTY-EIGHT HOURS SUSPENDED, AND TO PAY A FINE OF $1000, WITH $500 SUSPENDED, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING, P.J., BARNES, ISHEE, ROBERTS, MAXWELL, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY.

. The Fourth Amendment to the United States Constitution guarantees '‘[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]” U.S. Const. amend. IV; see Also Miss. Const. art. 3, § 23. The "fruit of the poisonous tree” doctrine provides that all evidence acquired as a result of an unreasonable search, including that evidence that is subsequently or indirectly acquired from the search, is inadmissible. Jackson v. State, 418 So.2d 827, 829 (Miss.1982).