ON WRIT OF CERTIORARI

KING, Justice,
for the Court:
¶ 1. The motion for rehearing is denied. The previous opinions are withdrawn, and these opinions are substituted therefor.
*536 ¶ 2. Carl Richard Cook was convicted of misdemeanor driving under the influence (“DUI”), first offense, in the Rankin County Justice Court. Cook appealed to the County Court of Rankin County. At a trial de novo before the county court, Cook’s counsel moved to dismiss the case, claiming that the investigatory stop which led to Cook’s arrest was an illegal search and seizure because it was based on an anonymous tip that lacked sufficient indi-cia of reliability. The county court denied the motion and entered a judgment of conviction. Cook then appealed to the Rankin County Circuit Court, and the circuit court affirmed the county court’s conviction. Next, Cook appealed his conviction to this Court, and the case was assigned to the Court of Appeals. Cook v. Rankin County, — So.3d -, 2013 WL 6233891 (Miss.Ct.App. Dec.3, 2013). Finding that the investigatory stop was legally justified, the Court of Appeals affirmed the judgment of the Circuit Court of Rankin . County. Having granted Cook’s Petition for Writ of Certiorari, we now consider whether the investigatory stop, which was based on an anonymous tip and led to Cook’s arrest, violated Cook’s Fourth-Amendment right to be free from unreasonable searches and seizures.
FACTS AND PROCEDURAL HISTORY
¶ 3. Because the facts of today’s case are not in dispute, they are quoted, in part, from the Court of Appeals’ opinion:
On March 12, 2011, Reservoir Patrol Officer Timothy Ware of the Pearl River Valley Water Supply District was on duty in the area of Northshore Parkway and Timber Lake Campground in Rankin County, Mississippi. Officer Ware received a call from the Reservoir patrol dispatch to “be on the lookout” (BOLO) for a vehicle that was driving erratically and the driver of the vehicle possibly flashing a badge of some sort.
Officer Ware did not know who made the initial call to law enforcement. To his knowledge, the “tip” was from an anonymous caller and was uncorroborated. The call described a gray Chevrolet Avalanche, and gave the license-plate number. Officer Ware saw a vehicle that matched the description he received. He turned his patrol vehicle around and proceeded behind the suspect Avalanche. Officer Ware observed the Avalanche for a short period of time, though he did not observe the vehicle driving erratically at that time. Nor did he observe the driver flashing a badge or committing any crimes.
Deputy Fred Lovett of the Rankin County Sheriffs Office was also in the area when the BOLO came over both the Reservoir patrol dispatch and the Rankin County Sheriffs dispatch. Deputy Lovett met the Avalanche head on. He then turned around and got within “a couple” of car lengths behind Officer Ware and the Avalanche.
Officer Ware initiated the stop on the Avalanche on Church Street in the Reservoir area. Based on subsequent interactions between Officer Ware, Deputy Lovett, and Cook, Cook was arrested for DUI, first offense.
Cook was • convicted of misdemeanor DUI, first offense, in violation of Mississippi Code Annotated Section 63-11-30(l)(a) (Supp.2012), in the Rankin County Justice Court. Cook appealed and received a trial de novo before the Rankin County County Court. In a non-jury trial before the county judge, Cook’s counsel moved to dismiss the case at the conclusion of the State’s case-in-chief. Cook argued that the BOLO that led to the investigatory stop violated his Fourth Amendment rights *537 against illegal search and seizure, as it was based on an anonymous tip that lacked sufficient indicia of reliability. The county judge denied the motion and entered a detailed order overruling the motion to dismiss. The county judge .also entered a judgment of conviction. Cook then appealed his conviction to the Rankin County Circuit Court. As error, Cook argued that the county judge erred in the application of the Fourth Amendment standards regarding uncorroborated anonymous tips. The circuit court entered an opinion and order that affirmed the county court’s conviction.
Id. at-, 2013 WL 6233891 at *1.
¶ 4. The Court of Appeals affirmed the circuit court’s judgment, finding that the stop did not violate Cook’s Fourth-Amendment rights. Id. at -, 2013 WL 6233891 at *6. Essentially, the Court of Appeals found that there were sufficient indicia of reliability when the officers located a vehicle matching the description of Cook’s vehicle. Id. Further, the court held that the behavior reported — “reckless driving and impersonating a law enforcement official [ — ] ... justified [the] investigatory stop to resolve the ambiguous situation.” Id.
ANALYSIS
¶ 5. In his Petition for Writ of Certiorari, Cook raised the following issue: ‘Whether law enforcement officers in Mississippi may conduct an investigatory stop on a vehicle based on an anonymous tip that lacks any corroboration....”
¶ 6. This Court applies a mixed standard of review when considering Fourth-Amendment issues. Eaddy v. State, 63 So.3d 1209, 1213 (Miss.2011) (quoting Dies v. State, 926 So.2d 910, 917 (Miss.2006)). We apply de novo review when determining whether probable cause or reasonable suspicion exists. Id. But the de novo review is limited to the trial court’s “decision based on historical facts reviewed under the substantial evidence and clearly erroneous standards.” Dies, 926 So.2d at 917.
¶ 7. An individual’s right to be' free from unreasonable searches and seizures is protected by the Fourth Amendment to the United States Constitution and Article 3, Section 23 of the Mississippi Constitution. See Eaddy, 63 So.3d at 1212-13 (citing U.S. Const. amend. IV; Miss. Const. art. 3, § 23; Graves v. State, 708 So.2d 858, 861 (Miss.1997)). Under the Fourth Amendment’s protections, po lice officers may detain a person for an investigatory stop when the officers have “reasonable suspicion, grounded in specific and articulable facts” which allow “the officers to conclude the suspect is wanted in connection with criminal behavior.” Eaddy, 63 So.3d at 1213 (citing Walker v. State, 881 So.2d 820, 826 (Miss.2004)). Reasonable suspicion generally stems from one of two sources: an officer’s personal observation, or an informant’s tip. Eaddy, 63 So.3d at 1213 (citing Williamson v. State, 876 So.2d 353, 355 (Miss. 2004)). “[A]n informant’s tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability may be shown from the officer’s independent investigation of the informant’s information.” Eaddy, 63 So.3d at 1213 (citing Florida v. J.L., 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000)).
¶ 8. Cook cites J.L., 529 U.S. 266, 120 S.Ct. 1375, in support of his argument that the stop in today’s case was not based on reasonable suspicion. In J.L., a young African-American male was charged with carrying a concealed firearm without a license and possessing a firearm while under the age of eighteen. Id. at 269, 120 S.Ct. 1375. J.L.’s arrest stemmed from an *538 anonymous tip reporting that “a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun.”[2] Id. at 268, 120 S.Ct. 1375. Officers responded to the tip and found three young African-American males near the subject bus stop. Id. One of the three males, J.L., had on a plaid shirt. Id. The officers frisked J.L. and seized a gun from his pocket. Id. J.L. eventually appealed his conviction to the United States Supreme Court, claiming that the search and seizure were invalid under the Fourth Amendment. Id. at 269, 120 S.Ct. 1375.
¶ 9. The Court in J.L. first noted that the search was based solely on the anonymous tip, as opposed to the officers’ personal observations. Id. at 270, 120 S.Ct. 1375. Further, the tip came from an anonymous source, rather than a known informant. Id. (quoting Adams v. Williams, 407 U.S. 143, 146-47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (“an anonymous tip alone seldom demonstrates the informant’s basis of knowledge or veracity”)). But the Court recognized that “there are situations in which an anonymous tip, suitably corroborated, exhibits ‘sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.’ ” J.L., 529 U.S. at 270, 120 S.Ct. 1375 (quoting Alabama v. White, 496 U.S. 325, 329, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990)). Thus, the relevant inquiry was “whether the tip pointing to J.L. had those indicia of reliability.” J.L., 529 U.S. at 270, 120 S.Ct. 1375. The Supreme Court found that it did not. Id. at 274, 120 S.Ct. 1375.
¶ 10. The Court’s holding had two bases. First, the anonymous call contained “no predictive information and therefore left the police without means to test the informant’s knowledge or credibility.” Id. at 271, 120 S.Ct. 1375. Second, the accurate description of the subject’s location and appearance, standing alone, is not a sufficient indicium of reliability:
An accurate description of a subject’s readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person. Cf. 4 W. LaFave, Search and Seizure § 9.4(h), p. 213 (3d ed. 1996) (distinguishing reliability as to identification, which is often important in other criminal law contexts, from reliability as to the likelihood of criminal activity, which is central in anonymous-tip cases).
Id. at 272, 120 S.Ct. 1375.
¶ 11. Although the Court found in J.L. that the tip did not have sufficient indicia of reliability, the Court did recognize that there are some circumstances where the danger alleged may warrant a search without the requisite showing of reliability. Id. at 273, 120 S.Ct. 1375. For example, a call reporting that a person is carrying a bomb is distinguishable from a call reporting that a person is carrying a firearm. Id. at 273-74, 120 S.Ct. 1375. The dissent attempts to distinguish the case at hand, positing that a car, which officers did not observe violating any traffic laws, and about which no allegations of any sort of devastating weapons exist, is somehow an imminent danger. Dis. Op. ¶ 33. The Su *539 preme Court specifically stated that it did “not say, for example, that a report of a person carrying a bomb need bear the indicia of reliability we demand for a report of a person carrying a firearm.” J.L., 529 U.S. at 278-74, 120 S.Ct. 1375. A firearm carries as much, if not more, potential for devastation as does a car. A bomb carries a much greater potential for devastation. Moreover, firearms and cars are both legal items, whereas a bomb is not. A ear is more closely equated to a firearm, rather than a bomb.
¶ 12. Similar to J.L., this Court in Ead-dy, 63 So.3d at 1214, found that officers lacked reasonable suspicion to stop a vehicle after they received an anonymous tip stating that a man with three outstanding arrest warrants, Wendell Barnes, was driving a red Cadillac with Texas plates in Port Gibson. One officer was familiar with Barnes and could visually identify him. Id. at 1211. The officers eventually located a vehicle matching the informant’s description and stopped the car. Id. Barnes was not in the car; but the officers saw a gun on the passenger seat, smelled alcohol, and saw an empty liquor bottle in the car. Id. One of the officers searched the driver of the vehicle, Terrance Eaddy, for officer-safety purposes and found two bottles of a white substance, which appeared to be cocaine. Id. Eaddy was arrested for possession of cocaine with intent to distribute and possession of a weapon by a convicted felon. Id. He then filed a motion to suppress evidence of the cocaine and the gun discovered during the search, and the trial court denied the motion. Id. On appeal, this Court found that the officers did not have reasonable suspicion to stop and search Eaddy, in part, because the informant’s tip did not provide reasonable suspicion to make an investigatory stop. Id. at 1214.
¶ 13. Prior to Eaddy, this Court in Williamson v. State, 876 So.2d 353 (Miss. 2004), affirmed a trial court’s order denying a defendant’s motion to suppress evidence obtained as a result of an anonymous tip. In Williamson, the defendant was arrested after police received a the following information:
(1) two white males had come into Campbell’s Big Star and purchased “large quantities” of Pseudoephedrine (also known as Sudafed); (2) these two individuals had also attempted to purchase Sudafed from the Family Dollar Store; (3) these two white males left Campbell’s Big Star in a white van with license number 4BA 347, and headed west on Highway 84, also known as Azalea Drive.
Id. at 354. Apparently, the information received was from two sources, but the informants’ identity was unknown. Id. Officers then spotted two men in the white van described in the tips parked at a Fred’s Dollar Store, which also is known to sell Sudafed. Id. Officers eventually approached the van, searched it, and found chemicals which are “precursors” used in the manufacture of controlled substances. Id. The defendant appealed to this Court and contested the trial court’s denial of his motion to suppress. Id. Finding that all of the details provided by the tips were verified by the officers prior to the stop, and considering that retail stores often called in these types of tips to police, this Court affirmed the trial court’s denial of the defendant’s motion to suppress. Id. at 356.
¶ 14. We also have addressed reasonable suspicion in driving-under-the-influence (DUI) cases. In Floyd v. City of Crystal Springs, 749 So.2d 110, 112 (Miss.1999), this Court upheld the defendant’s DUI conviction, finding that reasonable suspicion to stop the defendant was present. An off-duty police officer in Floyd *540 received a tip from a known informant that a person was driving a red convertible Mustang in a reckless manner. Id. at 112. The off-duty officer relayed the information to a dispatcher, who radioed the information to an on-duty officer. Id. The on-duty officer then intercepted a car matching the description and eventually pulled over the car, although the officer never observed the Mustang driver violate any traffic laws. Id. at 112. The officer pulled over the vehicle and observed an open liquor bottle on the passenger side. Id. At that point, the driver exhibited signs of intoxication, including staggering while attempting to walk and slurred speech. Id.
¶ 15. Considering the accuracy of the informant’s description of the vehicle in Floyd and the fact that the informant was known and had provided correct information to officers in the past, this Court found that the tip provided reasonable suspicion to stop the vehicle. Id. at 119. In its analysis, this Court cited with approval a Texas Court of Appeals case which noted that “a tip by unnamed informant of undisclosed reliability standing alone-will rarely establish the requisite level of suspicion necessary to justify investigative detention.” Id. at 118 (citing State v. Sailo, 910 S.W.2d 184 (Tex.App.1995)).
¶ 16. Today’s case is distinguishable from Floyd and Williamson. In Floyd, 749 So.2d at 112, the police officer who received the tip knew the informant, and the informant had provided correct information to the officer in the past. In today’s case, the informant was anonymous. In Williamson, 876 So.2d at 354, officers received tips from two sources and eventually located the suspects in the parking lot of a store known to sell “precursors.” The informants had reported the suspects for purchasing “precursors” at other stores. Id. In today’s case, one anonymous caller reported a person driving erratically and flashing what appeared to be some type of badge at other drivers. This behavior was never observed by the officers in today’s case prior to stopping Cook. While the dissent requires only that the readily identifiable description of the car be rehable, the United States Supreme Court requires more, in that the tip must be “reliable in its assertion of illegality, not just in its tendency to identify a determinate person.” J.L., 529 U.S. at 272, 120 S.Ct. 1375. Put simply, the anonymous tip in today’s case lacks the indicia of reliability that were present in previous cases before this Court.
¶ 17. Rather, today’s case is similar to Eaddy, where an unknown informant reported that a person with outstanding arrest warrants was in a particular car. Like Eaddy, the officers here failed to take further action to corroborate the criminal activity reported in the tip prior to stopping Cook. Without taking further action to corroborate the criminal activity reported, the officers did not have reasonable suspicion to stop Cook. An accurate description of Cook’s vehicle and location is insufficient. As the United States Supreme Court noted in J.L., reliability of identification of a person and reliability as to the identification of criminal activity must be distinguished. See J.L., 529 U.S. at 272, 120 S.Ct. 1375 (A tip correctly identifying a person in a particular location “does not show that the tipster has knowledge of concealed criminal activity. The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.”). Further, permitting a stop solely on an anonymous tip such as the one here can open the door for legal stops based on tips provided by persons with intent to harass or embarrass others. See id. To be clear, however, •today’s opinion does not stand for the proposition that any anonymous tip, stand- *541 tag alone, will not sufficiently justify a search. For example, a report of someone intending to carry out a mass shooting would not require the same indicia of reliability as a report of an erratic driver. See id. at 273, 120 S.Ct. 1375.
¶ 18. The lack of sufficient indicia of reliability in today’s case, coupled with the officers’ failure to corroborate the criminal activity reported, results in the stop violating Cook’s Fourth-Amendment right to be secure from unreasonable searches and seizures. As such, the trial court erred in denying Cook’s motion to dismiss. For this same reason, the Court of Appeals erred in affirming the trial court.
CONCLUSION
¶ 19. The Court of Appeals erred in finding that reasonable suspicion to stop Cook existed in today’s case. Therefore, we reverse the judgments of the Court of Appeals and the Rankin County Circuit Court affirming Cook’s conviction. Without the evidence gathered as a result of the stop, the evidence against Cook is insufficient to sustain a DUI conviction. See Eaddy, 63 So.3d at 1216. As such, we reverse and render a judgment of acquittal.
¶ 20. REVERSED AND RENDERED.
WALLER, C.J., DICKINSON, P.J., KITCHENS AND CHANDLER, JJ., CONCUR. PIERCE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, P.J., LAMAR AND COLEMAN, JJ.

. The dissent attempts to distinguish this description, which described the person and his clothing, as well as describing his exact location, from this case, because the informant described the car as well as its location in the instant case. Dis. Op. ¶ 33. Yet the descriptions are virtually equivalent.