# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-KA-01579-COA

**TADERRIUS SCRUGGS A/K/A TADERRIUS M. SCRUGGS**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                            **APPELLEE**

DATE OF JUDGMENT:            03/11/2019
TRIAL JUDGE:                HON. JOHN R. WHITE
COURT FROM WHICH APPEALED:  ALCORN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     OFFICE OF STATE PUBLIC DEFENDER
                            BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY:  BRITTNEY SHARAE EAKINS
DISTRICT ATTORNEY           JOHN WEDDLE
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED - 03/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE CARLTON, P.J., GREENLEE AND McDONALD, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Taderrius Scruggs was tried and convicted of armed robbery in the Circuit Court of Alcorn County.  Scruggs was sentenced to forty years of incarceration in the custody of the Mississippi Department of Corrections (MDOC), with fifteen of those years suspended and twenty-five years to serve, followed by five years of post-release supervision.  Scruggs was also required to pay a fine, court costs, assessments, and restitution.

¶2.     Scruggs appeals his conviction and sentence, asserting that he was detained without reasonable suspicion while the robbery victim was brought to his location for a possible

identification, in violation of his right to be free of an unlawful "seizure" under the Fourth Amendment to the United States Constitution and Article III, Section 23 of the Mississippi Constitution. He further asserts that, as a result, the victim's positive identification and his (Scruggs's) subsequent statements to the police were inadmissible as "fruit of the poisonous tree." Additionally, Scruggs asserts that he received ineffective assistance of counsel because his lawyer did not seek to exclude this evidence at trial. For the reasons addressed below, we affirm Scruggs's conviction and sentence and dismiss Scruggs's ineffective-assistance claim without prejudice to his right to pursue relief in a properly filed motion for post-conviction relief on this alleged error.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶3. Scruggs's trial occurred on March 5-6, 2019. The victim, Roberto Perez, testified that about midday on April 7, 2015, as he was cleaning his car in his carport, two men robbed him at gunpoint and stole his wallet and his cell phone. According to Perez's testimony, the two men were walking down the street, and then they approached him. One man pointed a handgun at him while the other took Perez's wallet and his cell phone from his vehicle. The men then ran away. Perez said that both men were black and that the one who pointed the gun at him was black but "light skinned" wearing a "red sweatshirt and some shorts." He described the other man as being older and having "darker skin and he had, like, little braids on his hair."

¶4. After the men ran away, Perez testified that he ran inside, and his wife called 911.

2

Perez's cousin, Marcelino Contreas, who lived about four houses down on the same street as Perez, testified that Perez came to his house and told him what happened, and then the two of them went back to Perez's home. Contreas testified that just before Perez came over, he had seen the two men running by his own home.

¶5.    In response to the 911 call, Captain Landon Tucker and Officer William Timms of the Corinth Police Department (CPD) arrived at Perez's home. Contreas acted as an interpreter for Perez as needed. Perez told the police that he had been robbed and gave descriptions of the two men. Contreas also described the men. Officer Timms testified that based upon their description of the two men, he put out a "be on the lookout" (BOLO) alert for "two black males. One of them . . . dark-skinned with dreadlocks and kind of [an] older gentleman. And then there was a younger gentleman that was supposedly light-skinned, a younger black male, that had a red jacket."[1]

¶6.    Detective Rogers testified that he was also on duty the day the robbery occurred, and Captain Tucker called him to come to the scene (Perez's home). Captain Tucker gave him Perez's description of the two suspects,[2] and Detective Rogers confirmed that a BOLO was sent out with this information.

¶7.    Officer Timms testified that he left the scene, and he and another officer were later

---

[1] Captain Tucker was serving in Iraq at the time of the trial, so he did not testify.

[2] Detective Rogers testified that Captain Tucker said Perez described the suspects as "two black males[, ] one short, light-skinned wearing, a red shirt. The other one was darker skinned, tall and his hair was in braids and a gray shirt."

3

called and told to return to Perez's home and take Perez to the Combs Court apartments, where a man was being held for possible identification. They did so. Contreas accompanied Perez and the officers. Perez did not recognize the man who was being detained, but he recognized another man in the crowd of bystanders, Edmon Morgan, as the man who took his wallet and phone. Officer Chad Harville of the CPD, who was at the scene, testified that Morgan was arrested and taken in for questioning.

¶8.     While Perez was still at this location, Officer Timms testified that he received a call that another man (later identified as Scruggs), was being detained "just around the corner" (in the same apartment complex) for Perez's possible identification. Officer Timms and another officer took Perez and Contreas to that location.

¶9.     Regarding the circumstances surrounding Scruggs's detention, Captain Ben Gann of the CPD testified that he received an anonymous tip that there had been a robbery and that one of the suspects could be found in the cul-de-sac at Combs Court. Captain Gann testified that he received the tip on his personal cell phone. He said he was not involved in the case and did not know that a robbery had occurred. Captain Gann passed this tip along to Detective Rogers, who told him that the police were "in the process of working" an armed robbery.

¶10.    Detective Rogers testified that after talking with Captain Gann, he went to 811B Pierce Street, which is in the cul-de-sac of Combs Court. He then testified:

> I knocked on the door and a male subject came to the door that fit the description of the second male [suspect]. And I asked his name and he said

Taderrius Scruggs. And I asked him could he come outside with me. He came outside and we had the victim [(Perez)] pull around there and he [(Perez)] identified him [(Scruggs)] as the second suspect.

Scruggs was then arrested and questioned by Detective Rogers.

¶11. Detective Rogers's interview of Scruggs was videotaped, and the videotape was played for the jury. The jury was also given copies of the interview transcript. In the interview, Scruggs admits that he and Morgan robbed a "Mexican." Scruggs also told Detective Rogers that the weapon used was a .38-caliber revolver, which he said he discarded. He told the detective that he robbed Perez "to get [his] girl out of jail." Detective Rogers testified that when he asked Scruggs for his girlfriend's name during the interview, Scruggs said it was "Katrina Magee." The transcript of the interview indicates that Scruggs's response to that question was unintelligible. Detective Rogers testified that he confirmed that "Katrina Magee" was in jail and had been booked the same day as the robbery.

¶12. Morgan (the other suspect) pleaded guilty to the Perez robbery. He testified at trial that on the morning of the robbery, Scruggs asked him for $500 to get his (Scruggs's) girlfriend out of jail. Morgan said he told Scruggs that he did not have the money. According to Morgan's testimony, the two men went walking, and Scruggs suggested that they "rob some Mexican." Morgan said they saw Perez and approached him. Scruggs pulled out a handgun. Morgan said he did not know Scruggs had a handgun. He admitted that he took Perez's wallet and cell phone as Scruggs aimed the gun at Perez. Morgan said he and Scruggs took off running and split up. Morgan testified that he discarded the wallet after he

found no money inside. Police found Perez's wallet where Morgan told them it would be. They did not find the weapon allegedly used in the robbery or Perez's phone.

¶13. The State rested its case, and the defense moved for a directed verdict, which the trial court denied.

¶14. Scruggs testified on his own behalf. He said that he ran into Morgan the morning of the robbery and that Morgan asked him for $500 to buy drugs. Scruggs also said that he was not wearing shorts that day as Perez had described. He testified that he told Morgan about his girlfriend being arrested a week before the robbery. Scruggs also testified that he did not need to commit any robbery to get money to get his girlfriend out of jail because his aunt already had the money ready for him to use. Scruggs repeatedly denied knowing Katrina McGee. He said that his girlfriend's name was Lacoria Terrell. Scruggs testified that he and Morgan went their separate ways after talking and that he was not involved in the robbery.

¶15. Scruggs testified that he never actually truthfully confessed to the police about being involved in the robbery. He only repeated details that Detective Rogers provided during questioning, and he only said what Detective Rogers wanted to hear in order to get the interview over so that he could post bail. Scruggs also testified at trial that he never had a gun. He testified that he said a "Mexican" was robbed only by process of elimination because Detective Rogers indicated that the robbery victim was not white or black. He said he specifically referenced a .38-caliber revolver in his interview only because that was the kind of gun he knew Morgan had.

6

¶16. A unanimous jury found Scruggs guilty of armed robbery. He was sentenced to forty years of incarceration in the custody of the MDOC, with fifteen years suspended and twenty-five years to serve, followed by five years of post-release supervision. Scruggs appeals.[3]

## STANDARD OF REVIEW

¶17. "'Both the Fourth Amendment to the United States Constitution and Article III, Section 23 of the Mississippi Constitution protect an individual's right to be free from unreasonable searches and seizures.'" *Cole v. State*, 242 So. 3d 31, 38 (¶12) (Miss. 2018) (quoting *Eaddy v. State*, 63 So. 3d 1209, 1212 (¶12) (Miss. 2011)). A "mixed standard of review" applies in considering Fourth Amendment issues. *Cook v. State*, 159 So. 3d 534, 537 (¶6) (Miss. 2015). Specifically, this Court will "apply de novo review when determining whether probable cause or reasonable suspicion exists . . . . But the de novo review is limited to the trial court's 'decision based on historical facts reviewed under the substantial evidence

---

[3] Scruggs's notice of appeal was filed late, but the reasons it was filed late are not attributable to Scruggs or his current appellate counsel. Accordingly, in its en banc order entered January 28, 2020, this Court allowed Scruggs's appeal to proceed as timely.

Additionally, Special Assistant Attorney General Brittney Eakins filed a motion and supporting affidavit asking the Court to suspend Mississippi Rule of Appellate Procedure 47 and allow her to represent the State in this appeal despite the fact that she was employed as a law clerk for the Mississippi Supreme Court when Scruggs's notice of appeal was filed. The motion was unopposed. Rule 47 provides that a former Supreme Court law clerk may not participate "in any case that was pending in [the Mississippi Supreme Court or Court of Appeals] during the tenure of such position." In her affidavit supporting her motion, however, Eakins states that she "did not personally and/or substantially participate in [the appellant's] case," and she had no knowledge of it during her tenure as a law clerk. Accordingly, a panel of this Court granted Eakins's unopposed motion for wavier of Rule 47 in its order entered on November 19, 2020.

and clearly erroneous standards.'" *Id.* (quoting *Dies v. State*, 926 So. 2d 910, 917 (¶20) (Miss. 2006)).

## DISCUSSION

### I.    Fourth Amendment Right to Be Free from Unreasonable Search and Seizure

¶18.    Scruggs asserts that Detective Rogers violated his Fourth Amendment rights when he detained him without reasonable suspicion. Scruggs further asserts that because of this purported unreasonable detention, Perez's identification of Scruggs as one of the robbers and Scruggs's subsequent statements to police were inadmissible as "fruit of the poisonous tree." For the reasons stated below, we find no merit in Scruggs's assertions.

¶19.    The record reflects that there was no motion to suppress Perez's identification of Scruggs or Scruggs's statements, nor was there any objection at trial to this evidence. Scruggs therefore requests that the Court review this issue for plain error. We recognize that Scruggs's failure to object to the admission of this evidence at trial would normally serve as a procedural bar to appellate review; however, we also recognize that we may review this issue under the plain-error doctrine.

¶20.    "'The plain-error doctrine is implicated when an error at trial affects substantial rights and results in a manifest miscarriage of justice.'" *May v. State*, 222 So. 3d 1074, 1084 (¶30) (Miss. Ct. App. 2016) (quoting *Hearn v. State*, 3 So. 3d 722, 736 (¶36) (Miss. 2008)). "Plain-error review is . . . appropriate where there is [an alleged] violation of constitutional rights." *Id.* We therefore address Scruggs's assertion that his Fourth Amendment rights

were violated on the merits.

## A. Lawful Detainment

¶21. "A person may be 'detained' short of an actual arrest for investigatory purposes." *Jones v. State*, 841 So. 2d 115, 125 (¶18) (Miss. 2003) (quoting *Estes v. State*, 533 So. 2d 437 (Miss. 1988)). As the Mississippi Supreme Court has recognized, "[t]he Fourth Amendment does not require police who lack the information necessary for probable cause to simply shrug their shoulders and allow a crime or a criminal escape to occur. Rather, it allows for investigatory stops to encourage the police to pursue their reasonable suspicions." *Dies*, 926 So. 2d at 919 (¶24); *see Chapman v. State*, 284 So. 2d 525, 527 (Miss. 1973) (not finding an unlawful detainment where the defendant was stopped for speeding and detained for witness identification for a separate crime where the driver and her passengers fit the description of the persons who had recently robbed a grocery store).

¶22. "Police officers may detain a person for a brief, investigatory stop consistent with the Fourth Amendment when the officers have 'reasonable suspicion, grounded in specific and articulable facts' that allow[] the officers to conclude the suspect is wanted in connection with criminal behavior." *Eaddy*, 63 So. 3d at 1213 (¶14) (quoting *Walker v. State*, 881 So. 2d 820, 826 (¶10) (Miss. 2004)); *see also Terry v. Ohio*, 392 U.S. 1, 21 (1968).

¶23. Reasonable suspicion may be proved by "either [an officer's] personal observation or an informant's tip." *Eaddy*, 63 So. 3d at 1213 (¶15) (citing *Florida v. J.L.*, 529 U.S. 266, 270 (2000)). An officer's personal observation can include "information from other law-

9

enforcement personnel." *Id.* "[A]n informant's tip may provide reasonable suspicion if accompanied by some indication of reliability; for example, reliability may be shown from the officer's independent investigation of the informant's information." *Id.* (citing *J.L.*, 529 U.S. at 270).

¶24. Based upon these principles, we find that Detective Rogers had reasonable suspicion to detain Scruggs in this case, and thus there was no Fourth Amendment violation. Scruggs, however, asserts that he was unlawfully detained and that his Fourth Amendment rights were violated because Detective Rogers relied upon an anonymous tip passed along to him by Captain Gann in detaining him until Perez arrived for identification. *See, e.g.*, *J.L.*, 529 U.S. at 270-74 (finding that officers lacked "reasonable suspicion" to stop and frisk a defendant where "the officers' suspicion that [the defendant] was carrying a weapon arose not from any observations of their own but solely from a call made from an unknown location by an unknown caller"); *Cook v. State*, 159 So. 3d 534, 541 (¶18) (Miss. 2015) (finding that a BOLO based upon an anonymous tip, without any other corroboration, did not provide reasonable suspicion for an officer's investigatory stop).

¶25. We recognize that "a tip by an unnamed informant of undisclosed reliability *standing alone* will rarely establish the requisite level of suspicion necessary to justify an investigative detention[.]" *Floyd v. City of Crystal Springs*, 749 So. 2d 110, 118 (¶32) (Miss. 1999) (emphasis added) (citing *State v. Sailo*, 910 S.W.2d 184, 188 (Tex. App. 1995)). But an anonymous tip "standing alone" is not the situation in this case. Rather, the anonymous tip

10

that Officer Gann passed along to Detective Rogers about Scruggs's location[4] was corroborated by the victim's (Perez's) description. When Detective Rogers went to the location given by the anonymous tipster, the person at that location (Scruggs) matched Perez's description, thereby establishing an independent ground for reasonable suspicion. In short, Detective Rogers's "reasonable suspicion" to detain Scruggs was "grounded in specific and articulable facts that allow[ed] [him] to conclude [Scruggs was] wanted in connection with criminal behavior." *Eaddy*, 63 So. 3d at 1213 (¶14). We therefore find no Fourth Amendment violation under these circumstances.

### B. Fruit of the Poisonous Tree

¶26. Based upon our analysis above, we find no basis for determining that Perez's identification of Scruggs, or Scruggs's statements during his interrogation, should have been excluded from evidence as "fruit of the poisonous tree." *Mosley v. State*, 89 So. 3d 41, 45 (¶13) (Miss. Ct. App. 2011) ("The 'fruit of the poisonous tree' doctrine is an exclusionary rule that makes inadmissible tangible evidence obtained incident to an unlawful search or seizure.") (quoting *Marshall v. State*, 584 So. 2d 437, 438 (Miss. 1991)).

¶27. As we have addressed above, we find that Scruggs was not unlawfully detained in violation of his Fourth Amendment rights. Perez's identification of Scruggs stems from his lawful, temporary detainment based on Detective Rogers's reasonable suspicion that Scruggs

---

[4] In *Eaddy*, 63 So. 3d at 1213 (¶15), the Mississippi Supreme Court recognized that an officer's "personal observation" in the "reasonable suspicion" context includes information from other officers.

had robbed Perez. Scruggs's statements to Detective Rogers were made in response to Detective Rogers's questioning after Scruggs had been identified by Perez and then arrested. As such, the evidence was not obtained as a result of an illegal detainment, and we therefore find that Perez's identification and Scruggs's statements to Detective Rogers were admissible. Scruggs's assertions to the contrary are without merit.

## II. Ineffective Assistance of Counsel

¶28. Scruggs argues that his legal representation at trial was constitutionally ineffective because his lawyer did not seek to exclude Perez's identification and Scruggs's statements to Detective Rogers based on a Fourth Amendment violation. "It is unusual for this Court to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal because there is usually insufficient evidence within the record to evaluate the claim." *Johnson v. State*, 191 So. 3d 732, 735 (¶13) (Miss. Ct. App. 2015) (ellipsis and internal quotation marks omitted). Typically, "'ineffective assistance claims are more appropriately brought during post-conviction proceedings.'" *Ellis v. State*, 281 So. 3d 1092, 1099 (¶20) (Miss. Ct. App. 2019) (quoting *Parker v. State*, 30 So. 3d 1222, 1232 (¶36) (Miss. 2010)).

¶29. This Court may address claims of ineffective assistance of counsel on direct appeal if "the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge" or the record "affirmatively shows ineffectiveness of constitutional dimensions." *Nelson v. State*, 222 So. 3d 318, 322 (¶5) (Miss. Ct. App. 2017).

12

¶30. Whether a criminal defendant has received ineffective assistance of counsel is a question of law reviewed de novo by a two-part analysis: "first, the defendant must show that counsel's performance was deficient[;] . . . second, the defendant must show that the deficient performance prejudiced the defense." *Taylor v. State*, 167 So. 3d 1143, 1146 (¶5) (Miss. 2015) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). For the reasons addressed below, we find that Scruggs's ineffective-assistance-of-counsel claim is not appropriate for review on direct appeal and should be dismissed without prejudice to his right to file a motion for post-conviction relief on this alleged error.

¶31. Scruggs bases his ineffective-assistance-of-counsel claim on his lawyer's failure to move to suppress or object to the admission of Perez's identification and Scruggs's statements to law enforcement. Scruggs stipulates that the record is adequate for appellate review of this issue, but the State does not. We find that these decisions relate to his lawyer's trial strategy. *Nelson*, 222 So. 3d at 322 (¶5) (recognizing that "[c]ounsel's choice[s] of whether or not to file certain motions . . . or make certain objections fall within the ambit of trial strategy") (quoting *Hancock v. State*, 964 So. 2d 1167, 1175 (¶18) (Miss. Ct. App. 2007))). Our review of the record indicates that Scruggs's assignment of error on this point is beyond the contents and face of the record and thus it should not be considered on direct appeal.

¶32. Because Scruggs raises a Fourth Amendment issue in connection with his ineffective-assistance-of-counsel claim, we also review the record to ensure that it does not

"affirmatively show[] that [Scruggs] was denied effective assistance of counsel of constitutional dimensions." *Young v. State*, 294 So. 3d 1238, 1244 (¶17) (Miss. Ct. App. 2020). We find that it does not. Scruggs asserts that his ineffective-assistance-of-counsel claim reaches constitutional dimensions based upon his lawyer's failure to seek exclusion of Perez's identification and Scruggs's statements to the police as inadmissible fruit of the poisonous tree. But as we have addressed above, we find that Perez's identification and Scruggs's statements were admissible under this analysis, as they were obtained as a result of a lawful detainment and then a lawful arrest.

¶33. Accordingly, we find that the record fails to "affirmatively show[] ineffectiveness of constitutional dimensions," and thus Scruggs's alleged ineffective-assistance-of-counsel claim is not reviewable on direct appeal for this additional reason. We therefore dismiss Scruggs's ineffective-assistance claim without prejudice to his right to properly file a motion for post-conviction relief on this alleged error. *See Williams v. State*, 296 So. 3d 711, 721 (¶28) (Miss. Ct. App. 2019), *cert. dismissed*, 284 So. 3d 752 (Miss. 2020)).

¶34. **AFFIRMED.**

**WILSON, P.J., WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. BARNES, C.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. GREENLEE AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**